**Beth L. WAHLE, Plaintiff Below, Appellant,**

v.

**The MEDICAL CENTER OF DELAWARE, INC., a Delaware corporation, formerly known as the Wilmington Medical Center, Inc., a Delaware corporation, and Dr. K. Ross Hardy, M.D., Defendants Below, Appellees.**

**No. 661988.**

Supreme Court of Delaware.

Submitted: Oct. 12, 1988.
Decided: April 12, 1989.

Edward C. Gill, Wolhar & Gill, P.A., Georgetown, for plaintiff below, appellant.

Richard Galperin and Joanne B. Wills, Morris, James, Hitchens & Williams, Wilmington, for defendants below, appellees.

Before HORSEY, MOORE, and HOLLAND, JJ.

HORSEY, Justice:

In this appeal we review a ruling of Superior Court dismissing a claim of medical malpractice for plaintiff's continuing disregard of pretrial scheduling orders and her ultimate failure to identify timely her medical expert witness, as required by 18 *Del.C.* § 6853. Plaintiff asserts that the trial court abused its discretion in its pretrial ruling, which prohibited plaintiff from introducing at trial, scheduled to begin two months later, expert medical testimony supportive of her claim. Plaintiff also contends that the court erred as a matter of law in granting defendants' motion for summary judgment without complying with the notice requirements of Superior Court Civil Rule 56(c). We find no abuse of discretion or error of law and therefore affirm the court's grant of summary judgment for defendants.

I

In August 1986, plaintiff Beth L. Wahle commenced this action seeking monetary damages for personal injuries which, by reason of the amount claimed, became subject to compulsory pretrial arbitration under Superior Court Civil Rule 16(c). Her complaint charged The Medical Center of Delaware, Inc. ("Medical Center") and Dr. K. Ross Hardy, a former intern at the Medical Center, with medical malpractice. The complaint stated that defendant Hardy had negligently applied a plaster cast to plaintiff's broken arm, causing a loss of use and mobility of the arm.

 Since Wahle asserted a claim for medical malpractice for defendants' alleged deviation from an asserted standard of health care, she was required to comply, first, with the arbitration and hearing procedures of Rule 16 and, secondly, with the relevant provisions of the Delaware Health Care Malpractice Act, 18 *Del.C.*, ch. 68 and, in particular, section 6853. Rule 16 re-

quires a plaintiff asserting a claim for personal injuries to produce promptly not only all relevant medical records and reports, but also any expert witness reports which plaintiff intends to rely upon at the arbitration hearing. Super.Ct.Civ.R. 16(c)(3)(A). Under the Health Care Act, plaintiff was also required either (a) to designate an expert medical witness, pursuant to 18 *Del. C.* § 6853[1] who would both support her claim of an "alleged deviation from the applicable standard of care" and of a causal relationship between the deviation and the alleged personal injury; or (b) to elect to go before a medical malpractice review panel, pursuant to 18 *Del.C.* §§ 6802(b), 6803–6814.[2] Plaintiff chose not to go before a review panel and, therefore, was required to designate her expert medical witness who would support her claim in compliance with section 6853.

Wahle then failed to comply not only with section 6853 but with the detailed production and discovery requirements of Rule 16(c) preceding an arbitration hearing. Wahle failed to disclose the medical expert on whom she intended to rely for purposes of arbitration and, indeed, did nothing for a period of seven months after filing suit.

In early March 1987, plaintiff consented to a default judgment being entered in defendants' favor in the arbitration proceeding; and plaintiff thereupon made demand for a trial *de novo* in Superior Court, pursuant to Rule 16(c)(8).

In the Superior Court, plaintiff lapsed again into a further period of inaction, ignoring Superior Court's pretrial discovery requirements and, in particular, the requirements of section 6853 controlling a medical malpractice claim. In May 1987, the trial judge entered a pretrial "scheduling order." The order established a timetable for the completion of discovery by both parties and called for disposition of all pretrial motions in advance of a pretrial conference first scheduled for September 14, 1987. The order required, in part, that the parties complete all discovery by August 10.

On May 14, 1987, defendants directed a series of interrogatories to plaintiff contemporaneously with the issuance of the court's scheduling order. Defendant's first interrogatory (hereafter "expert witness interrogatory") asked plaintiff to disclose all information pertinent to section 6853: the identification of plaintiff's expert medical witness, the substance of the expert's testimony, supportive facts and medical authority, and the expert's familiarity with the standard of care.[3] Wahle failed to answer defendants' interrogatory number one or any of defendants' remaining interrogatories by August 10, the court's originally imposed discovery deadline.

After defendants moved to compel plaintiff to answer the discovery requests, the trial judge ordered plaintiff to respond to defendants' outstanding interrogatories by September 16. The court then extended the cut-off date for discovery a further sixty days, until October 31, 1987. Plain-

---

1. 18 *Del.C.* § 6853 provides, in pertinent part:
 **§ 6853. Requirement of expert medical testimony.**
 No liability shall be based upon asserted negligence unless expert medical testimony is presented as to the alleged deviation from the applicable standard of care in the specific circumstances of the case and as to the causation of the alleged personal injury or death, except that such expert medical testimony shall not be required if a malpractice review panel has found negligence to have occurred and to have caused the alleged personal injury or death and the opinion of such panel is admitted into evidence....

2. Under section 6812 of the Medical Malpractice Act, the malpractice review panel's opinion is admissible in the Superior Court as *prima facie* evidence.

3. The interrogatory read:
 Please list the name and address of each medical expert who will testify on your behalf at trial and for such expert, please state:
 (a) the subject matter of his testimony;
 (b) the substance of the facts and opinions to which the expert is expected to testify;
 (c) the published material he relied upon in forming his opinion;
 (d) the materials reviewed by the expert; and,
 (e) if he has any familiarity with the appropriate standard of care in the community, how he acquired such familiarity.

tiff, however, never fully complied with the court's order. Wahle continued to decline to identify her medical expert.

Defendants then filed a second set of interrogatories, once again requesting the expert witness information. Plaintiff's response was due by October 31. Again plaintiff defaulted; and when no response had been filed by December, defendants once again asked the trial judge to compel plaintiff to identify her expert and to complete her response to all outstanding discovery. On the day before the scheduled hearing on defendants' motion, plaintiff filed a partial response and, for a third time, made no response to the expert witness interrogatory. She stated only that no medical expert had been retained.

When the parties held a pretrial teleconference on January 18, 1988, defendants submitted their pretrial stipulation indicating readiness for trial and raised the issue of plaintiff's failure to obtain an expert. Plaintiff clearly was not ready for trial as she failed to even submit a pretrial stipulation.

With the case in this posture, the court discussed with counsel plaintiff's continuing discovery breaches and, most significantly, her failure to provide defendants with the expert witness information required by section 6853. Plaintiff responded by requesting a further ninety days within which to secure a medical expert. For the first time, plaintiff informed the court of her purported reason for not sooner designating a medical expert—her previous lack of necessary funds to do so. The court declined plaintiff's request for a further stay of trial. The court stated that if a lack of funds had indeed been her reason for not disclosing her expert, she should have said so when she requested her previous continuances. The court then fixed a trial date of March 23, 1988 and ruled that plaintiff would be precluded from introducing expert medical testimony at the trial.

The court's January 18 ruling effectively ended the case by rendering a trial meaningless. At the court's suggestion, defen-dants, two days later, filed a motion for summary judgment on the ground that plaintiff could not state a claim for malpractice under 18 *Del.C.* § 6853. In the meantime, plaintiff filed what amounted to a motion for reargument. Plaintiff asked the court to grant plaintiff until April 21 to provide defendants with the name of an expert medical witness and the remaining information previously demanded by defendants. In the alternative, plaintiff made a "demand" for the convening of a malpractice review panel under 18 *Del.C.* § 6802(b).

On January 22, 1988, the court, after hearing the parties on their respective applications, declined to continue the trial, denied plaintiff's motion for reargument and for further time to find a medical expert and granted defendants' motion for summary judgment. The court deferred ruling on plaintiff's malpractice review panel application pending plaintiff's submission of legal authority establishing a right to invoke such relief at that stage of the proceedings. When plaintiff provided no authority in support of her application, the court entered a formal order affirming its previous rulings and dismissed the case. Plaintiff then docketed this appeal.

## II

■ Plaintiff's principal contention on appeal is narrowly framed: whether the trial court abused its discretion in dismissing her case before trial for her failure to identify her expert medical witness when the court had not issued an explicit order requiring her to identify her expert and to respond to the related interrogatories by a date certain. Our standard of review is directed at determining whether the trial judge's decision was an "exercise of judgment directed by conscience and reason, as opposed to capricious or arbitrary action. . . ." *Pitts v. White*, Del.Supr., 109 A.2d 786, 788 (1954). The relevant question is not whether this Court agrees with the decision below but whether, in light of the facts and rules of law applicable here, the "judicial mind . . . could reasonably

have reached the conclusion of which complaint is made." *Id.*

▮ Implicit in plaintiff's statement of the question presented is a concession of dilatory conduct, but not such as to deserve dismissal. Plaintiff's time frame for determining dilatory conduct is limited to the ten months that the case was in litigation but she conveniently ignores the seven and one-half months that the case was subject to mandatory arbitration. The trial court was of the view that plaintiff's conduct in arbitration was as relevant to appropriate sanctions as her conduct in litigation; and we fully agree. Thus, plaintiff's conduct throughout the seventeen and one-half months that the case was pending was the proper time frame for determining the appropriate sanction for plaintiff's dilatory conduct. When the record is so viewed in its entirety—as detailed above—the trial court's preclusion ruling is neither arbitrary nor capricious. The court's findings that plaintiff frustrated and abused the arbitration process and the specific requirements of Rule 16(c) are fully sustained by the record.[4]

The arbitration process which Superior Court has adopted (sometimes referred to as a "court-annexed" arbitration process as distinguished from arbitration mutually agreed to by parties) has been correctly recognized as having "an enormous potential for reducing caseloads by enhancing the effectiveness of settlement...." Edwards, *Alternative Dispute Resolution: Panacea or Anathema?* 99 Harv.L.Rev. 668, 673 (1986). If the Superior Court is able to use arbitration to resolve quickly relatively simple disputes such as the one in this case, it will be able to spend "more time and energy resolving difficult public law problems," *id.* at 674, and to handle more rapidly the civil and criminal case load of the court. However, the substan-

tial benefits offered by arbitration can only be realized if litigants diligently pursue the process and comply with its rules of procedure. In this case, plaintiff clearly did not.

▮ Plaintiff's seven-month abuse of the arbitration process was followed and compounded by ten months of inaction, disregard, and breach of pretrial scheduling, discovery and production orders of the court, compliance with which is essential for the proper functioning of the judicial system. Critical to the proof of plaintiff's malpractice claim was expert testimony meeting the requirements of 18 *Del.C.* § 6853; and by virtue of our rules of pretrial discovery and production, defendants were entitled to demand timely disclosure of such information from plaintiff sufficiently in advance of trial to provide defendants with a reasonable opportunity to defend themselves. In view of the critical nature of the medical evidence to all parties, we conclude that the trial court was fully justified in imposing the ultimate sanction of dismissing plaintiff's suit.

▮ Litigants who continually miss discovery deadlines, both self-imposed and court-imposed, as in this case, may not claim surprise by imposition of the ultimate sanction of dismissal. *Gebhart v. Ernest DiSabatino & Sons, Inc.*, Del.Supr., 264 A.2d 157, 159 (1970). Trial courts must be afforded broad discretion to fashion orders to expedite cases consistent with the administration of justice and the efficient disposition of their case loads. *Cebenka v. Upjohn Co.*, Del.Supr., 559 A.2d 1219, 1222–1223 (1989) (opinion). *See* Super.Ct. Civ.R. 16. The rights of litigants who in good faith comply with the court's pretrial discovery procedures should not be jeopardized by litigants who disregard such rules. This is particularly so in a medical malpractice claim controlled by the Health Care Malpractice Act, 18 *Del.C.*, ch. 68.

---

4. The trial judge observed that the problem with the expert had "been known from the very beginning of the case." The court accurately analogized plaintiff's conduct in arbitration to a contestant who "threw in the towel"; and properly concluded by stating: "It would make a mockery out of the arbitration process if everyone just said, 'Forget it. I am going to concede. Enter judgment against me so I can take an appeal de novo.'" This trenchant comment is one that future litigants should not disregard.

Plaintiff's claim of surprise at dismissal and related argument that she was under no explicit court order compelling the identification of her expert by a date certain is disingenuous. From the outset of the lawsuit, she was on notice as a matter of law that her case hinged on proof complying with section 5863. Defendants were entitled to a timely discovery of this essential ingredient to plaintiff's suit; and plaintiff stood in breach of three court orders relating to scheduling of trial and discovery of such information. Those orders were implicitly, if not explicitly, directed to section 6853; therefore, plaintiff's claim of abuse of judicial process must be rejected.

The case is clearly distinguishable from *Rittenhouse Assoc. v. Frederic A. Potts, Inc.*, Del.Supr., 382 A.2d 235 (1977); and *Sundor Electric, Inc. v. E.J.T. Construction Co.*, Del. Supr., 337 A.2d 651 (1975). In *Rittenhouse*, we found dismissal to be a harsh sanction because plaintiff's failure to comply with discovery orders was due solely to a dispute between in-state and out-of-state counsel. 382 A.2d at 237. In *Sundor*, we set aside a default judgment as too severe a sanction where the party had made a good faith effort to answer interrogatories. 337 A.2d at 652. Those cases are not only distinguishable on their facts as to nature of the neglect, but also they did not implicate the violation of a legislative mandate constituting a keystone to recovery.

 Finally, plaintiff contends that the trial court committed procedural error under Rule 56 in granting summary judgment without complying with the ten day notice requirement of Rule 56(c). Plaintiff asserts that the defendants' motion was noticed for hearing within two days or less, thereby depriving plaintiff of any "chance to prepare a response." As previously noted, the court's preclusive order against the

medical expert testifying in support of plaintiff's claim rendered dismissal of plaintiff's suit inevitable. Therefore, the procedures employed to achieve dismissal were inconsequential. Nevertheless, the court was authorized under Superior Court Civil Rule 56(bb) [5] to invoke Rule 56 on less than ten days notice. Moreover, plaintiff has established no prejudice from the abbreviated procedure since plaintiff had been afforded a full opportunity to be heard upon the underlying issue on January 22, 1988. Plaintiff also waived any objection to the court's procedures by failing to file a timely objection with the trial court. Supr. Ct.R. 8; *Wilmington Trust Co. v. Conner*, Del.Supr., 415 A.2d 773 (1980).

\* \* \*

Affirmed.

---

**5.** Superior Court Rule 56(bb) provides:
 The limitation of time for the filing of motions for summary judgments in accordance with Rule 56(a) and Rule 56(b) shall not prohibit the filing of a motion for summary judgment by any party when, as a result of a pretrial conference, in the opinion of the Court, the filing of such motion is desirable. This Rule shall not affect in any way the provisions of Rule 12(b) and Rule 12(c) with respect to motions for summary judgment.