**Ralph HOAG, Plaintiff Below–Appellant,**

v.

**AMEX ASSURANCE COMPANY, Defendant Below–Appellee.**

**No. 461, 2007.**

Supreme Court of Delaware.

Submitted: May 14, 2008.
Decided: July 21, 2008.

Kenneth F. Carmine (argued), Esquire, of Potter, Carmine & Associates, P.A., Wilmington, Delaware for appellants.

Stephen P. Casarino (argued), Esquire, of Casarino, Christman & Shalk, Wilmington, Delaware for appellee.

Before HOLLAND, JACOBS and RIDGELY, Justices.

RIDGELY, Justice.

Plaintiff–Appellant Ralph Hoag ("Mr. Hoag") appeals the Superior Court's dismissal of his uninsured motorist claim against Amex Assurance Co. ("Amex") as a sanction for his failure to provide discovery as ordered by the trial court. On appeal, Mr. Hoag argues that dismissal was too extreme and constituted an abuse of discretion. We find no merit to his appeal and affirm.

## I.  Facts

In January of 2002, Mr. Hoag and his wife, Angela Hoag ("Angela") separated due to marital difficulties. Mr. Hoag moved to Pennsylvania while Angela continued to reside in Newark, Delaware. Angela applied for auto insurance with Amex on March 29, 2002. Although the policy application required her to list her spouse, she did not.[1] On July 12, 2002, Mr. Hoag was severely injured in a car accident in Delaware. He was a passenger and the driver of the car was uninsured. The Hoags filed an uninsured motorist claim with Amex.[2] Amex denied the claim. On September 8, 2003, the Hoags filed this action.[3]

Amex requested information from Mr. Hoag that would establish whether or not he was a member of his wife's household at the time of the accident.[4] Mr. Hoag claimed that they reconciled in April 2002. He also claimed that he called his wife on his way to their marital residence in Newark from a company cell phone on July 12, just before the accident. The cell phone belonged to A–C Reproduction and Copy Center ("A–C Reproduction").

---

1.  It is undisputed that at the time she made her application to Amex, she was separated from Mr. Hoag.

2.  Mr. Hoag brought an action against the driver and recovered for the limits of her liability coverage.

3.  Angela Hoag is no longer a party in this action. Angela and Mr. Hoag divorced in October 2006.

4.  There is evidence that indicates that Mr. Hoag was not a member of his wife's household on the date of the accident. For example, Mr. Hoag's home address on hospital records is Marlton, New Jersey. Both Angela and Ralph Hoag, however, are on the lease for the home.

Amex served Mr. Hoag with a series of interrogatories in October 2003. When Mr. Hoag failed to respond, Amex wrote him on February 25, September 21, and October 28, 2004, requesting answers to the interrogatories. In November 2004, Amex filed a motion to compel, which was later withdrawn, despite Mr. Hoag's limited answers to the interrogatories. On December 15, 2004, the Superior Court ordered Mr. Hoag to answer the interrogatories within two weeks. He failed to comply with the order. On July 28, 2005, Mr. Hoag submitted his answered interrogatories, but answered "to be supplied" in response to Amex's request for the cell phone number he used to call his wife on the date of the accident. On March 9, 2006, Amex wrote Mr. Hoag again, requesting answers to the interrogatories served in October 2003.

The Superior Court entered a Scheduling Order that required Mr. Hoag to answer the interrogatories in their entirety by April 14, 2006. He failed to comply with this order. Amex wrote Mr. Hoag again on April 17 and August 1, 2006, expressing disappointment with his interrogatory answers, and specifically that he failed to provide the cell phone number he used in 2003. After Amex filed another motion to compel, the Superior Court ordered the completion of discovery by November 9, 2006. After Mr. Hoag failed to comply for a third time with a Superior Court order, Amex filed another motion to dismiss. Mr. Hoag finally provided a cell phone number on November 16 and identified the phone carrier as Sprint; however, on February 2, 2007, Sprint informed Amex that it had no records for that phone number.

On February 19, 2007, Amex again requested Mr. Hoag provide his correct phone number from the time of the accident.[5] On June 8, Amex filed another motion to dismiss based on Mr. Hoag's failure to provide an accurate cell phone number. At the July 10 hearing on the motion, the Superior Court stated the following:

> Because [the cell phone record] goes not only to a small detail about whether they were residing and how much relevance the phone calls may have to where they were residing but—what his residence was specifically, but it does go to the heart of their credibility and the nature of their relationship, all of which are either consistent or inconsistent with where he resided. And so I see it as a far more significant factor bearing on the critical issue in this case, which is whether he was a member of that household.

The Superior Court again ordered Mr. Hoag to provide the cell phone records and gave him three days to do so, stating:

> I am going to give Mr. Hoag his ninth, 11th, 12th-hour opportunity. And that is this: By noon Friday, he has the bills to [counsel for Amex]. Not 12.01 p.m., not one minute later. He has the bills that reflect the actual calls and the phone number of Mrs. Hoag to [counsel for Amex].

This was the fourth order of the Superior Court directing Mr. Hoag to comply with this discovery. According to Mr. Hoag's counsel, after this hearing Mr. Hoag "informed counsel for the first time that the cell number sought was a business number," which prompted him to contact A–C Reproduction for the records. On July 12, counsel for Mr. Hoag informed counsel for Amex that he had contacted A–C Reproduction without success. A–C Reproduction informed counsel by letter that they were able to find Mr. Hoag's cell phone number (they identified their service provider as Cingular), but were unable to provide any particular

5. The record does not show that Amex received any response to this request.

phone records because the records had been destroyed in a flood. Further, the employer represented that she was unable to obtain a duplicate of the files from Cingular because "their files only go back to 2003." After Mr. Hoag failed to provide the cell phone records by the Superior Court's deadline, the Superior Court dismissed the complaint.[6] The court also denied Mr. Hoag's motion for reargument.[7] This appeal followed.

## II. Discussion

■ Mr. Hoag's sole argument on appeal is that the Superior Court's dismissal of his complaint for failure to provide discovery answers was too extreme and constituted an abuse of discretion.[8] Amex responds that the Superior Court properly dismissed Mr. Hoag's complaint for his wilful and repeated failures to answer discovery and to comply with court orders.

■ Superior Court Civil Rule 37(b)(2)(C) provides that if a party fails to obey an order to provide or permit discovery, the action may be dismissed as to the disobedient party.[9] A court is also vested with inherent authority to dismiss a plaintiff's action for failure to prosecute or com-

---

6. According to Mr. Hoag's counsel, he represented that "Cingular had indicated that with a subpoena they would be willing to search for the records," which was contrary to what A–C Reproduction had told him. He argued that the Superior Court could either grant "additional time to attempt to subpoena Cingular's records or enter an order in limine excluding testimony about the alleged call from Ralph Hoag to Angela Hoag on the night of the accident."

7. The trial judge noted: "Mr. Hoag, when the information was first requested could have easily provided his cell phone number, his wife's cell phone number; presumably he knew that because he used it, and, the request was made, and much closer in time and proximity of time than now, for him to either have a recollection or secure the information. Mr. Hoag failed to do that, and as a result the Court dismissed the case. I'm not persuaded by the arguments made today that I should reverse that ruling. The case remains dismissed for failure to prosecute."

8. Upon review of the record, the basis for the Superior Court's dismissal was failure to prosecute, not failure to provide discovery answers. The court's ruling, however, was based upon Mr. Hoag's failure to provide credible information to establish whether he was a "member" of his wife's household at the time of his accident.

9. Super. Ct. Civ. R. 37(b)(2)(C). In addition to dismissal, Rule 37(b)(2) provides the court with discretionary authority to impose "such

orders in regard to the failure as are just," such as:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order; (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party; (D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination; (E) Where a party has failed to comply with an order under Rule 35(a) requiring that party to produce another for examination, such orders as are listed in paragraphs (A), (B), and (C) of this subdivision, unless the party failing to comply shows that that party is unable to produce such person for examination.

In lieu of any of the foregoing orders or in addition thereto, the Court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the Court finds that the failure was substantial-

ply with its rules or orders.[10] We review the sanction of a dismissal for abuse of discretion.[11]

▮▮▮ The sanction of dismissal is severe and courts are and have been reluctant to apply it except as a last resort.[12] Other sanctions are often more appropriate because "the important goal of timely adjudications must be balanced against the strong policy in favor of decisions on the merits."[13] "Trial courts should be diligent in the imposition of sanctions upon a party who refuses to comply with discovery orders, not just to penalize those whose conduct warrants such sanctions, but to deter those who may be tempted to abuse the legal system by their irresponsible conduct."[14] Nevertheless, a motion to dismiss or for a default judgment should be granted if no other sanction would be more appropriate under the circumstances.[15]

"Entry of a default judgment is a severe sanction for discovery abuse, and this Court has interpreted Rule 37(b)(2)(C) to require a showing of an element of wilfulness or conscious disregard of court-ordered discovery before such sanction is imposed."[16] The United States Supreme Court has articulated a similar rationale:

> There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright

---

ly justified or that other circumstances make an award of expenses unjust.

10. *Am. Fed. Sav. & Loan Ass'n v. Hurm*, 583 A.2d 660, 1990 WL 169072, at *2 (Del.Supr.); *accord Gebhart v. Ernest DiSabatino & Sons, Inc.*, 264 A.2d 157, 159 (Del.1970).

11. *Hurm*, 1990 WL 169072, at *2; *Gebhart*, 264 A.2d at 159; *Rittenhouse Assocs., Inc. v. Frederic A. Potts & Co.*, 382 A.2d 235, 236 (Del.1977); *Sundor Elec., Inc. v. E.J.T. Constr. Co.*, 337 A.2d 651, 652 (Del.1975). *See also Draper v. Med. Ctr. of Del.*, 767 A.2d 796, 798 (Del.2001) ("It is well-settled law that a trial court has discretion to dismiss an action for failure to prosecute.").

12. *See, e.g., Sundor Elec., Inc.*, 337 A.2d at 652 ("It has been frequently held that a motion for such a judgment will be granted if no other sanction would be more appropriate under the circumstances.") (citations and internal quotation marks omitted).

13. *Draper*, 767 A.2d at 798.

14. *Holt v. Holt*, 472 A.2d 820, 824 (Del.1984). Moreover, this Court explained that "[d]iscovery abuse has no place in our courts, and the protection of litigants, the public, and the bar demands nothing less than that our trial courts be diligent in promptly and effectively taking corrective action to 'secure the just, speedy and inexpensive determination of *every* proceeding' before them." *Id.*

15. *Sundor Elec., Inc.*, 337 A.2d at 652. Further, "if a party fails to comply with a court order permitting discovery, an award of expenses including attorney's fees is mandatory unless the failure was substantially justified or other circumstances make the award unjust." *Holt*, 472 A.2d at 823 (citing *Wileman v. Signal Fin. Corp.*, 385 A.2d 689, 690 (Del.1978)).

16. *Holt*, 472 A.2d at 823. *See also Sundor Elec., Inc.*, 337 A.2d at 652 ("Judgment by default is, of course, the extreme remedy and generally speaking the Rule has been interpreted to require 'some element of wilfulness or conscious disregard of the order' before such a sanction is imposed."); *Hurm*, 1990 WL 169072, at *2 (Del.Supr.) ("There is little doubt that the imposition of the ultimate sanction of dismissal is severe. Courts are, and should be, reluctant to apply such a sanction against litigants based upon the errors of their attorneys.") (citation omitted); *Wahle v. Med. Ctr. of Del.*, 559 A.2d 1228, 1233 (Del. 1989) ("Litigants who continually miss discovery deadlines, both self-imposed and court-imposed, as in this case, may not claim surprise by imposition of the ultimate sanction of dismissal. Trial courts must be afforded broad discretion to fashion orders to expedite cases consistent with the administration of justice and efficient disposition of their case loads.") (citation omitted); *Shockley v. Wilmington Med. Ctr.*, 1988 WL 147321, at *2 (Del.Supr.); *Rittenhouse Assocs., Inc.*, 382 A.2d at 236–37.

dismissal as a sanction for failure to comply with a discovery order. It is quite reasonable to conclude that a party who has been subjected to such an order will feel duly chastened, so that even though he succeeds in having the order reversed on appeal he will nonetheless comply promptly with future discovery orders of the district court.

But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.[17]

Similarly, the United States Court of Appeal for the Third Circuit has established the following guidelines for appellate courts in determining whether a trial court abused its discretion in dismissing a case:

In exercising our appellate function to determine whether the trial court has abused its discretion in dismissing, or refusing to lift a default, we will be guided by the manner in which the trial court balanced the following factors, which have been enumerated in the earlier cases, and whether the record supports its findings: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.[18]

These factors-and all of them need not be met— [19] are useful in evaluating a decision to dismiss for failure to prosecute or comply with its rules or orders. The Superior Court implicitly engaged in a similar evaluation when making its decision here.

Although the sanction imposed upon Mr. Hoag was severe, we conclude that the Superior Court did not abuse its discretion in dismissing the complaint. Mr. Hoag contends that he responded to Amex's discovery requests to the best of his ability and that he had no reason to withhold the phone records, especially considering there was additional evidence that would establish whether or not he was a member of his wife's household at the time of the accident. He also argues that the Superior Court abused its discretion by not imposing other less severe sanctions, including awarding attorneys' fees and costs. We disagree. Mr. Hoag's repeated failures to comply with four court orders over the span of three years and his refusal to cooperate with opposing counsel on this

---

**17.** *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 642–43, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)

**18.** *Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, 868 (3d Cir.1984) (emphasis omitted); *accord Scarborough v. Eubanks,* 747 F.2d 871, 875 (3d Cir.1984) ("Because such an order deprives a party of its day in court, our precedent requires that we carefully review each such case to ascertain whether the district court abused its discretion in applying such an extreme sanction."). Other circuit courts of appeal employ similar balancing tests. *See* 8A Fed. Prac. & Proc. Civ.2d § 2284 (Discretion of District Court in Imposing Sanctions).

**19.** *See Hicks v. Feeney,* 850 F.2d 152, 156 (3d Cir.1988) ("Not all of these factors need be met for a district court to find dismissal is warranted. A Rule 37(b)(2)(C) dismissal is a serious sanction. In certain cases, it is a necessary tool to punish parties who fail to comply with the discovery process and to deter future abuses.").

issue demonstrated personal responsibility, prejudice to Amex, a history of dilatoriness, and wilful conduct for which any other sanction would have been ineffective. His conduct also undermined the merits of his claim against Amex. While dismissal remains the option of last resort, we find no abuse of discretion by the Superior Court.

### III. Conclusion

The judgment of the Superior Court is **AFFIRMED.**