# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

GARY and ANNA-MARIE CUPPELS, individually and on behalf of all others similarly situated,

        Plaintiffs,

v.

MOUNTAIRE CORPORATION, an Arkansas corporation, MOUNTAIRE FARMS, INC., a Delaware corporation, and MOUNTAIRE FARMS OF DELAWARE, INC., a Delaware corporation,

        Defendants.

: C. A. No.: S18C-06-009 CAK

Submitted: June 26, 2020
Decided: June 29, 2020

## MEMORANDUM OPINION AND ORDER

*Upon Plaintiffs' Motion for Sanctions:* ***GRANTED***

Chase T. Brockstedt, Esquire, Stephen A. Spence, Esquire, Baird Mandalas Brockstedt, 1413 Savannah Road, Ste. 1, Lewes, Delaware 19958, Attorneys for Plaintiffs.

Philip C. Federico, Esquire, Brent Ceryes, Esquire, Schochor, Federico and Staton, P.A., 1211 Paul Street, Baltimore, Maryland 21202, Attorneys for Plaintiffs.

F. Michael Parkowski, Esquire, Michael W. Teichman, Esquire, Parkowski, Guerke & Swayze, P.A., 1105 North Market Street, 19th Floor, Wilmington, Delaware 19801, Attorneys for Defendants.

Lisa C. McLaughlin, Esquire, Todd L. Goodman, Esquire, John C. Phillips, Jr., Esquire, Phillips, Goldman, McLaughlin & Hall, P.A., 1200 North Broom Street, Wilmington, DE 19806, Attorneys for Defendants.

James R. Wedeking, Esquire, Sidley Austin, LLP, 1501 K Street, N.W. Washington, DC 20005, Attorney for Defendants.

**KARSNITZ, J.**

The case before me is a serious, high stakes litigation. The parties have treated it as such and argued over nearly everything. Zealous representation is appropriate and commendable. Here, however, I am being asked to examine if one party has gone beyond the bounds of what is acceptable. Plaintiffs have filed a second motion for sanctions, and I resolve the motion in my opinion.

I addressed Plaintiffs' first motion several weeks ago and denied it in an oral ruling. In that ruling, I expressed deep concern about Defendants' tactics and conduct. While I believed at that time Defendants' conduct supported sanctions, I exercised my discretion and gave Defendants another chance.[1] Among other things, in reviewing the first motion, I was flabbergasted that Defendants had filed a motion to compel responses to Rule 30[2] interrogatory answers almost two years after they had been filed. I have also at, I believe, every conference, hearing or argument I have conducted to date, warned the parties of the lack of civility which permeated the case.

If I use a baseball analogy, this is Defendants' third strike. I have tried to control the litigation not only through discovery rulings, but also by

---

[1] While only the first motion for sanctions, I had on at least one prior occasion expressed concern about Defendants' litigation strategies.
[2] DEL. SUPER. CT. CIV. R. 30.

importuning all parties to act civilly, to operate within Court rules and to take positions supportable by precedent.

In my opinion, Plaintiffs have met their burden to show both violation of rulings I or Special Master White have made, and Defendants wrongfully refused to disclose the contents of documents which are obviously relevant. The documents inappropriately redacted bear directly upon one of the many contested issues: whether this Court has jurisdiction of the Defendant Mountaire Corporation (hereinafter "MC"). The battle over jurisdiction has lasted almost two years, and, of course, significantly delayed the case. While the old saw "...justice delayed is justice denied..." can only be taken so far, I give it more than due consideration. My urging to civility has fallen on deaf ears. I am entering an order sanctioning all Defendants.

## PROCEDURAL HISTORY

On June 13, 2018, Plaintiffs Gary and Anna-Marie Cuppels, in their individual capacity and on behalf of similarly-situated individuals (collectively, "Plaintiffs") filed suit (the "Complaint") against Defendants Mountaire Corp. ("MC") Mountaire Farms, Inc. ("MFI"), and Mountaire Farms of Delaware, Inc. ("MFODI," along with MC and MFI, "Defendants") related to the operation of a chicken processing facility in Sussex County, Delaware. On July 20, 2018, Defendants separately moved to

2

dismiss the Complaint (collectively, the "Rule 23 Motions to Dismiss"). Plaintiffs filed the Amended Complaint on October 12, 2018 (the "Amended Complaint"). Two weeks later, on October 26, 2018, Defendants moved to dismiss the Amended Complaint (the "Rule 12 Motion to Dismiss," along with the Rule 23 Motions to Dismiss, the "Motions to Dismiss").

On February 22, 2019, the Court entered an order with respect to the Motions to Dismiss[3], in which it "conclude[d] that limited discovery should be allowed for the limited purpose of (a) determining whether Plaintiffs can maintain this action as a class action and (b) deciding whether MC has sufficient contact with Delaware to permit this Court to exercise personal jurisdiction over it."[4] The February 22nd Order further provided that "[t]he parties may conduct discovery, limited to (a) the elements of class certification as outlined by Rule 23(b), and (b) MC's contacts with Delaware."[5]

On February 25, 2019, the Plaintiffs propounded a set of Interrogatories, Requests for Production, and Requests for Admissions directed to Defendants (the

---

[3] D. I. 87 (the "February 22nd Order").
[4] *Id.*, pp. 3-4.
[5] *Id.*, p. 4.

"Jurisdictional Discovery Requests").[6] On April 10, 2019, Defendants served their Responses to Interrogatories and Requests for Production (the "Jurisdictional Discovery Responses").[7] Two days later, Plaintiffs sent a letter to the Court, in which counsel represented that "the parties' positions on the scope of discovery are polarized and the Court's intervention is necessary."[8]

The Court held an office conference on April 30, 2019, and one day later, the parties sought clarification of the February 22nd Order.[9] On May 14, 2019, the Court appointed David A. White, Esquire as Special Discovery Master (the "Special Master").[10] Two weeks later, the Court provided further clarity regarding the scope of Defendants' discovery obligations,[11] in which the Court authorized Plaintiffs to seek discovery limited to theories of specific jurisdiction under 10 DEL. C. § 3104(c), civil conspiracy, and agency.[12]

On June 4, 2019, Plaintiffs moved to compel Defendants' supplemental response to the Jurisdictional Discovery Requests (the "Jurisdictional Motion to Compel"). Briefing on the Jurisdictional Motion to Compel concluded, and the

[6] D. I. 88, D. I. 89, D. I. 90.
[7] D. I. 106, D. I. 107, D. I. 108.
[8] D. I. 105.
[9] D. I. 118, D. I. 119.
[10] D. I. 125.
[11] D. I. 148 (the "May 29th Order").
[12] Id., pp. 9-10.

4

Special Master issued a thirty-seven page letter decision and opinion granting

Plaintiffs' request for relief in part.[13] Of relevance to Plaintiffs' current application

for relief, the Special Master decided:

> [Jurisdictional Discovery] Request [for Production] No. 11 seeks the production of minutes from all shareholder meetings and the meetings of board of directors. The Request is over broad. However, the requested information could evidence, among other things, MC's direct or indirect involvement in the operation of the facilities in Delaware. See 10 DEL. C. § 3104(c)(3). MC is compelled to produce the minutes from the meetings of shareholders and the board of directors that concern (1) the formation of a business for the purpose of operating a chicken-processing facility in Delaware, (2) the operation of the facilities in Delaware, (3) the sharing of revenues or expenses among the Defendants related to the facilities in Delaware, (4) the sharing of employees among the Defendants at the facilities in Delaware, and (5) MC's oversight or supervision of the facilities in Delaware. To the extent that the parties' confidentiality order does not address the treatment of sensitive information that may be contained in these documents, the parties must first confer regarding a protocol for redacting the documents. If the parties are unable to reach an agreement concerning the protection of proprietary or commercially-sensitive information within ten (10) days, the parties should request a status conference with the Special Master to further discuss and resolve the matter.[14]

The Special Master granted similar relief with respect to the Jurisdictional Discovery

Request for Production Directed to MFODI.[15] Defendants took exception to the June

---

[13] D. I. 157 (the "June 2019 Decision").
[14] *Id.*, p. 28.
[15] *Id.*, p. 34.

2019 Decision,[16] which the Court denied in large part.[17] The Court described the June 2019 Decision as "robust" and "comprehensive."[18] Other than a limitation imposed on Defendants' obligation to respond to a single interrogatory, the Court adopted the June 2019 Decision *in toto*.[19]

Following the issuance of the August 2019 Order, the Court stayed this action to provide the parties with an opportunity to pursue mediation.[20] The parties' efforts to mediate ultimately failed and the stay expired. While Defendants' subsequent efforts to comply with the Jurisdiction Discovery Order are unclear, as of the Court's Office Conference on December 30, 2019, Plaintiffs insisted that Defendants had not satisfied their obligations.

In January 2020, Defendants supplemented their response to the Jurisdictional Discovery Requests.[21] Shortly thereafter, "Plaintiffs complained of 'extensive redactions' undertaken by Defendants in their document production and requested 'a

---

[16] D. I. 165.

[17] D. I. 215 (the "August 2019 Order," along with the June 2019 Decision, the "Jurisdictional Discovery Order").

[18] *Id.*, p. 4.

[19] *Id.*, p. 9.

[20] *See* D. I. 226.

[21] *See* Special Master Letter Decision and Order at 3, *Cuppels, et al. v. Mountaire Corp., et al.*, C.A. No. S18C-06-009 CAK (Del. Super. Ct. Apr. 30, 2020), White, S.M. (the "April 30 Decision").

privilege log for all withheld documents and an appropriately detailed redaction log.'"[22] Defendants responded to Plaintiffs' complaints as follows:

> As to Plaintiffs' request for a privilege log for all withheld documents and a redaction log, these are unnecessary and, therefore, will not be produced. In his June 19, 2019 decision regarding jurisdictional discovery and his August 6, 2019 decision regarding class discovery, the Special Master was clear that Defendants had to produce only responsive, non-privileged documents and information.[23]

The war of letters continued, in which Plaintiffs disputed the notion that no privilege log was necessary.[24] Defendants answered "that while no documents were withheld from their production on the basis of privilege, 'certain information contained in the produced documents [was redacted] on the grounds that the information either was privileged, confidential, or non-responsive to the relevant request.'"[25] Defendants agreed to produce a redaction log and provided Plaintiffs with a pair of redaction logs in March 2020 (the "Redaction Logs").[26] The Redaction Logs prompted additional

---

[22] *Id.*, pp. 3-4.

[23] *Id.*, p. 4.

[24] *Id.*

[25] *Id.*

[26] *Id.* at pp. 4-5. "The Redaction Logs listed four (4) categories of redacted information: (1) trade secret information related to pricing, performance, and sales; (2) commercially-sensitive information related to finances; (3) names of non-party entities; and (4) information that falls outside of the Jurisdictional Discovery Order. Plaintiffs argue that Defendants' redactions are improper." *Id.*, p. 5.

questions, in which Plaintiffs found Defendants' redactions to be "improper and unsupported" and demanded an unredacted copy thereof.[27]

On April 8, 2020, Plaintiffs formally sought to compel Defendants' production of unredacted copies of the documents identified on the Redaction Logs (the "Redaction Motion to Compel").[28] That same day, Plaintiffs sought the entry of an order compelling the production of unredacted copies of minutes from Defendants' meeting of shareholders and board of directors, respectively (the "Meeting Minutes Motion to Compel").[29] The Redaction Motion to Compel and the Meeting Minutes Motion to Compel presented an area of overlap concerning Defendants' decision to redact portions of meeting minutes.[30] Defendants redacted the meeting minutes on the basis of responsiveness,[31] in which they interpreted the June 2019 Order to permit "the redaction of those sentences, paragraphs, or pages from meeting minutes that did not touch on the aforementioned subjects."[32]

The Special Master issued a letter decision and opinion concerning the Redaction Motion to Compel and the Meeting Minutes Motion to Compel on April

---

[27] *Id.*
[28] *Id.*
[29] *Id.,* p. 6.
[30] *Id.,* pp. 5-6.
[31] *Id.,* p. 7.
[32] *Id.,* p. 19.

8

30, 2019.[33] The April 30 Decision compelled Defendants to produce unredacted copies of numerous documents, including meeting minutes.[34] The Special Master rejected Defendants' efforts to redact portions of responsive documents,[35] in which the April 30 Decision cited to four (4) cases from the district courts sitting in the Third Circuit in the previous four (4) year period which were adverse to Defendants' redaction position.[36] Further, the Special Master characterized Defendants' interpretation of the June 2019 Decision as "incorrect and without a basis of support[, in which he found that the June 2019 Decision] … excused Defendants from having to produce any meeting minutes, i.e., documents, which did not include information relevant to the subject areas. To the extent that any portion of the minutes from any meeting discussed one of [the] subject areas [listed in the June 2019 Decision], the document is responsive and it should be produced in its entirety (subject to the proper assertion of privilege)."[37] Finally, the Special Master rejected Defendants' confidentiality concerns based on the confidentiality order negotiated by the parties approximately one year prior to the April 30 Decision, in which the confidentiality order included strict provisions limiting Plaintiffs' use of discovery materials.[38]

---

[33] *Id.*
[34] *Id.*
[35] *Id.*, pp. 13-22.
[36] *Id.*, pp. 13-18.
[37] *Id.*, p. 20.
[38] *Id.*, pp. 21-22.

Defendants did not take an exception to the April 30 Decision. Pursuant thereto, Defendants produced unredacted meeting minutes among other documents. Plaintiffs' review of the unredacted documents prompted the filing of the Second Sanctions Motion.

## THE CONDUCT WHICH I
## FIND PRODUCES THIS RESULT

Not surprisingly, and in the face of the jurisdictional challenge, Plaintiffs sought production of comprehensive corporate records. Defendants fought the production and Mr. White ultimately limited Defendants' responsibilities to production of documents which address five specific areas as described above,[39] and generically dealing with topics which were related to MC's contacts with Delaware.[40] This Court affirmed that ruling and I ultimately ordered the documents be produced by the end of January, 2020.

Defendants produced some documents on time[41], but unilaterally redacted them to allegedly remove irrelevant material. Defendants told me at my hearing on Plaintiffs' first motion for sanctions they relied upon a minority view to support their action. Upon review of the record this is not correct. Defendants made the redaction only upon their own authority. In reviewing that conduct, the

---

[39] June 19 Decision.

[40] *Id.*

[41] The parties were still fighting over what was to be produced. *See* April 30 Decision.

Special Master found a few cases which supported unilateral redactions, but rejected the reasoning. Only after being directed to the minority view did Defendants seize upon it as justification. Defendants misdirection is but another reason to support the action I take here.[42] In addition, Defendants in their response cited authorities which had rejected their position. There is Delaware precedent from the Federal Court adopting the majority view.[43] Finally, the Special Master believed that the redactions had been made by the clients, not counsel.[44] Again, not surprisingly, Plaintiffs filed a motion to compel production of unredacted documents. Mr. White followed the majority view that full unredacted documents had to be produced. Defendants redactions were in part predicated upon a claim of privilege with accompanying privilege log. The privilege logs were of such poor quality the Special Master ordered new logs.[45] Defendants relied upon their determination of relevance and a claim of trade secrets. The latter claim is especially troubling to me as the parties have entered into a typical confidentiality

[42] Defendants argue in opposition to this motion that I have already ruled upon the same application. While I disagree with the contention, Defendants misdirection at the previous hearing would cause me to reconsider the decision I made at that time.
[43] *Del. Display Grp. LLC, et al. V. Lenovo Grp. Ltd., et al.,* 2016 WL 720977 at *6 (D. Del. Feb. 23, 2016) ("Plaintiffs instead argue that the information about attorneys' fees is 'irrelevant and highly sensitive'. ...This may be true, but such a fact does not entitle Plaintiffs to redact information, which they deem irrelevant, from otherwise responsive documents.") (ordering plaintiffs to produce unredacted versions of royalty reports.)
[44] April 30 2020 Decision.
[45] *Id.*

11

agreement which covered trade secrets. The claim of privilege was soon abandoned by Defendants.

In the Special Master's letter explaining his ruling granting Plaintiffs' motion to compel production of unredacted documents, Mr. White said Defendants'

> ...motivation for redacting those documents is not altruistic. History tells us that they are not making use of redactions in order to help Plaintiffs weed through tens of thousands of pages for relevant information. Defendants simply do not want Plaintiffs to possess the redacted information...

The unredacted documents were produced May 11, 2020.

Had the issue been resolved at that point, I would have taken no further action. But Plaintiffs have now provided me side-by-side comparisons of the documents in redacted and unredacted forms.[46] Even a cursory examination shows that the redactions were of information which clearly and obviously covered issues required by Mr. White's Order to be produced, and which bear directly on the jurisdictional issue, the same jurisdictional issue which has caused substantial delay in the case. Had the documents in unredacted form been produced when they should have, the case would be far closer to resolution.

---

[46] I attach the comparison as an Appendix to this opinion.

## LEGAL ANALYSIS

I have the inherent authority to manage my docket. I have the obligation to control parties' conduct to promote a fair, speedy and just resolution of cases. Superior Court Civil Rule 1 mandates that I apply all of the rules to reach a fair and just resolution of cases.

"Sanctions may serve one or more of three proper purposes: punishment, deterrence, or coercion."[47] The ability to award sanctions stems from the Court's inherent authority to manage its docket and the powers afforded it under the Delaware Superior Court Civil Rules.[48] Delaware Superior Court Civil Rule 37 authorizes the Court to sanction a party based on its failure to comply with a court order.[49] The rule provides, in pertinent part, that if "a party fails to obey an order to provide or permit discovery …, the Court may make such orders in regard to the failure as are just …"[50] The Court's authority includes the power to compel a non-compliant party to pay its adversary's reasonable expenses, including attorneys' fees,[51] in which the rule

---

[47] *In re ExamWorks Grp., Inc. S'holder Appr. Litig.*, 2018 WL 1008439, *6 (Del. Ch. Feb. 21, 2018).
[48] *Id.*; DEL. SUPER. CT. CIV. R. 1, 16, 37.
[49] DEL. SUPER. CT. CIV. R. 37(b); *Dynacorp, et al. v. Underwriters at Lloyd's London, et al.*, 2014 WL 4656393, at *3 (Del. Super. Ct. Sept. 18, 2014) ("Rule 37 gives the Court broad discretion to impose sanctions and shift costs for discovery violations."); *Pharmerica Long-Term Care, Inc. v. New Castle RX, LLC*, 2010 WL 5130746, at * (Del. Super. Ct. Dec. 8, 2010) (same).
[50] DEL. SUPER. CT. CIV. R. 37(b)(2).
[51] *Id.*

requires the Court to impose a monetary sanction unless "the failure was substantially justified or that other circumstances make an award of expenses unjust."[52]

Defendants assert two principal arguments in opposition to Plaintiffs' request for sanctions: (1) the issue was previously decided by the Court; and (2) its redaction of responsive documents was based on a good faith interpretation of the June 2019 Decision. I reject the first argument. The simple reason is that upon production of the unredacted documents, the obvious relevance of the documents becomes clear, as does how Defendants misinterpreted the decisions issued in this case for their own benefit.

Defendants' good faith defense also fails. Delaware Superior Court Civil Rule 34 requires a party to produce documents "as they are kept in the usual course of business ..."[53] Delaware Superior Court Civil Rule 5, along with an extensive body of case law, evidence a clear preference in favor of transparency and access to information.[54] Neither the Court nor the Special Master have issued any decisions in this Action which altered the requirements of these fundamental principles. In fact, the February 22nd Order, the May 29th Order, the June 2019 Decision, and the August 2019 Order make no reference to redactions, let alone authorize Defendants to redact

---

[52]*Id.*
[53]DEL. SUPER. CT. CIV. R. 34(b).
[54]DEL. SUPER. CT. CIV. R. 5.

14

information in those documents, which they deemed responsive, based on their unilateral determination that portions of such responsive documents were irrelevant or nonresponsive. Further, the Special Master previously rejected the notion that Defendants misinterpreted the June 2019 Decision as "incorrect and without a basis of support."[55] I agree. Defendants did not then, and have not now, cited to any legal authority permitting a line-by-line redaction of information in a responsive document on the basis of relevance and/or non-responsiveness. This omission, in light of four recent decisions from the district courts in the Third Circuit rejecting Defendants' premise, is significant, because Defendants have not advanced any legal authority to justify their interpretation of the June 2019 Decision. Defendants' position runs contrary to the rules of this Court, the legal findings of the District of Delaware and its sister courts, and the long-standing practice of attorneys in this State. Defendants' decision, as opposed to its interpretation of the June 2019 Decisioning, was strategic and flawed.

Defendants' reliance on case law in support of their good faith defense also falls short. First, *eBay* can be distinguished from this action on the facts. Although the Court of Chancery compelled the plaintiff to produce unredacted copies of meeting minutes in *eBay*, it did not find that defendants were entitled to recoup their

---

[55] April 30 Decision, p. 20.

expenses, because "the redaction of relevant portions of the minutes was an inadvertent oversight, not a knowing concealment or the result of grossly negligent conduct."[56] Defendants' conduct in this action was not inadvertent.[57] The redactions were intentional, and as discussed above, without any legal basis of support. Next, while a court may consider a party's good faith in determining whether sanctions are appropriate, [58] such efforts should be of a party's own accord and not motivated by a pending motion or looming sanction.[59] Here, Defendants produced unredacted copies of the meeting minutes in response to the April 30th Decision. Defendants' motivation to comply with the April 30th Decision is unknown, but noteworthy considering their prior failure to produce unredacted copies of the documents in response to the June 2019 Decision, the August 2019 Order, and the Court's direction at the December 2019 Office Conference. For similar reasons, Defendants mistakenly rely on *Dickinson* to excuse their history of noncompliance.[60] The facts underlying the Second Sanctions Motion bear no resemblance to *Dickinson*, which concerned the State of Delaware's level of compliance with an agreement to reform certain

---

[56]*eBay Domestic Holdings, Inc. v. Newmark, et al.*, 2009 WL 3494348, at *5 (Del. Ch. Oct. 29, 2009).

[57]The sheer number of redacted documents eliminates the possibility of mistake or neglect.

[58]*Aveta, Inc., et al. v. Bengoa*, 986 A.2d 1166, 1181 (Del. Ch. 2009).

[59]*Dyncorp*, 2014 WL 4656393, at *3; *Pharmerica Long Term Care, Inc.*, 2010 WL 5130746, at *3.

[60]*Dickinson v. Castle*, 1991 WL 208467, at *4-5 (Del. Ch. Oct. 15, 1991).

16

correctional facilities.[61] Unlike the present case, the record in *Dickinson* established a level of compliance over a prolonged period of time, in which "the history of the [prior] three years of [the] litigation [had] been one of sustained progress toward better and better conditions for prisoners ..." The present fact pattern bears more closely to those underlying the *Toussaint* decision, which the *Dickinson* court rejected in denying the plaintiff's motion for contempt.[62] Finally, *ExamWorks* only serves to bolster Plaintiffs' request for relief.[63] In *ExamWorks*, the court found the petitioners' misconduct to be "sloppy and haphazard"[64] in one respect and the product of "excusable neglect"[65] in another. In both instances, the nature of the petitioners' misconduct justified an award of sanctions.[66] Thus, any notion that Defendants innocently misinterpreted Delaware Superior Court Civil Rule 34 and the June 2019 Decision – a premise that I expressly reject – is of limited value.

Both case law and common sense dictate that before sanctioning a party, I must determine a violation of a court order occurred.[67] The violation cannot be

---

[61] *Id.*

[62] *Id.* ("In contrast to the facts in *Toussaint*, where the court had been faced with a long period of noncompliance and evidence that, absent coercion, noncompliance was likely to exist again in the future, the defendants in this case have worked, in my opinion, diligently and in good faith to comply with the Order ...") (citing *Toussaint v. McCarthy*, 597 F. Supp. 1427 (N.D. Cal. 1984)).

[63] *In re ExamWorks Grp., Inc. S'holder Appr. Litig.*, 2018 WL 1008439.

[64] *Id.* at *9.

[65] *Id.* at *10.

[66] *Id.* at *10-11.

[67] *Dickinson v. Castle, supra.*

merely technical, but must be a failure to obey the court in a meaningful way.[68] Our courts have authorized the sanction of dismissal or default judgment for discovery violations.[69] In a least one case the court has recognized the sanctions of deeming personal jurisdiction to be admitted.[70]

Five separate orders required Defendants to produce the documents requested.[71]

In my view the only way to move the case fairly and to demonstrate my commitment to civility and appropriate conduct is to order sanctions against Defendants. The time for talking and urging is over.

## THE APPROPRIATE SANCTIONS

I will implement the least severe sanctions appropriate under the facts and circumstances of the case.[72] Plaintiffs provide me three alternatives:

1. Finding liability against all Defendants.

2. Deferring as a sanction that MC is subject to the jurisdiction of this Court.

---

[68] *Id.*, citing *Palmigiano v. DiPrete*, 700 F. Supp. 1180 (D.R.I. 1988).
[69] DEL. SUPER. CT. CIV. R. 37(b)(2)(c); *Hoag v. Amex Assurance Co.*, 953 A.2d 713 (Del. 2008).
[70] *Hart Holding Co., Inc. v. Drexel Burnham Lambert, Inc.*, 1992 WL 127567 (Del. Ch. May 28, 1992).
[71] The June 19 Decision; Court Order of August 1, 2019 (D.I. 215); Court Order of December 30, 2019 (D.I. 249); the April 30 Decision; and Court Order of May 8, 2020 (D.I. 360).
[72] *Hoag v. Amex Assurance Co., supra.*

3. Money sanctions.

I address each suggestion *seriatim*:

## A. Finding Liability

Finding liability is for me the ultimate sanction. Imposing it ends perhaps the most important part of the case. Plaintiffs' damage claims are enormous. While Defendants would still be able to contest the amount of damages, they would not be able to contest their liability for the damages. I am unwilling to take that step. Arguably, what Defendants have done would support the step. I am exercising my discretion and will not impose this sanction.

## B. Finding Jurisdiction Over MC

On June 18, 2020, I issued an opinion in which I found and held that MC is subject to the jurisdiction of this Court. I did so on the merits and my view of the facts presented. While the relief requested by Plaintiffs is justified given what has transpired, the suggested relief is, as it turns out, no relief.

## C. Money Sanctions

I am left then with the sanction of imposing fees and costs on Defendants as a sanction. Plaintiffs have requested fees in the amount of $33,753.00 which were incurred as a result of the fight over documents in the larger jurisdictional fight. They also requested that I assess against Defendants the sum of $10,320.25 which represents their share of billings from Mr. White for work he did addressing the document issues.

I have reviewed Mr. White's billings. What he has billed is fair and reasonable, and was billed for time spent addressing the document issues. I assess it against all Defendants.

Imposing attorney's fees always to me has an element of arbitrariness. Plaintiffs ask for $33,750.00. I have no doubt the amount requested represents a reasonable value of the professional service and effort Plaintiffs expended in responding to the document issues. However, I am exercising my discretion in awarding the lesser amount of $18,000.00.

I contemplated assessing the sanctions only against MC. I am not, but rather am entering an order which holds all Defendants responsible, jointly and severally, for the money sanctions. I do so because all Defendants are represented by the same counsel and their strategy has been joint. In my view they should be

20

jointly responsible.

I take the actions I outline here with no joy and with great hesitation. Defendants are represented by competent, professional counsel. I do not know where the breakdown in civility and tactics occurred here, and it matters not. It is my hope that I will not again in this case be presented with issues of sanctions for inappropriate conduct.

Defendants shall pay to Plaintiffs' counsel within thirty days of this opinion and order the following:

| | |
|---|---|
| Fees: | $18,000.00 |
| Costs: | 10,320.25 |
| Total: | $28,320.25 |

**IT IS SO ORDERED**

Craig A. Karsnitz

cc:    Prothonotary

FILED PROTHONOTARY
SUSSEX COUNTY
2020 JUN 29 P 1: 06

Mountaire Corporation Executive Committee Meeting, December 12 and 13, 2002. MC017464.

4. Mike T. reviewed Delaware groundwater situation. EPA issued a consent order scheduled to be signed by December 16th, however, some of the requirements are unacceptable. Mike continues working on this.



Environmental Updates:

- Millsboro wastewater was discussed. Reed Engineering is designing a new system with project timeline
- Engineering design/field work    5/18

MC017596



4. Mike T. reviewed Delaware groundwater situation.

Mike continues working on this.

Environmental Updates:
- Millsboro WW treatment plant overview.
  - List of professionals assisting in WWTP efforts to return to proper operation.
  - Millsboro WW treatment plant offal room.
  - MWWTP anaerobic lagoons.
  - New WWTP design – will be submitted to DNREC in June
  - MWWTP expenses by year – 2018 - $21,907,517; 2019 - $28,590,340; 2020 - $8,828,540 – TOTAL $59,326,397.
  - MWWTP capital - $41,056,680 (est).
  - MWWTP consent order cost - $9,625,000.
  - TOTAL COST - $110,008,077.

MC017605

1

12. Dave discussed expansion plans being developed in [redacted] and Millsboro [redacted]

Meeting of Board of Directors of Mountaire Corporation, June 5, 2002. MC017458.




MC017470

12. Dave discussed expansion plans being developed in North Carolina and Millsboro as part of the four year plan (2002 – 2006). The discussion concluded with "fix Delaware" then increase volume, and increase volume in North Carolina.

## Long term direction being analyzed:

- DV – More whole birds; less ice parts
- DE – Don't mess it up; more b/b in tray
- NC – Upgrade b/b – upgrade tenders

Still analyzing options in Delmarva and Delaware.

Mike gave an update on the rendering project. Our objective is to maximize offal return (particularly in DV) and to secure long term placement for offal products in both DE and DV. He reviewed three options. Our contract with Tyson (DV) expires in August, 2011. We must have something placed and operating by then.

Mike gave an update on the rendering project.

Mountaire Corporation Executive Committee Meeting, December 8 and 9, 2009. MC017484.

2

15. Doug reviewed Millsboro:



MC017481

15. Doug reviewed Millsboro:

- Increase tray pack by 400,000 per week
- Saddle packs
- Leg quarter batching system for export
- Sealed bag system
- Additional Halal volume for export



6. Mike gave an update on the rendering project.

6. Mike gave an update on the rendering project. Our objective is to maximize offal return (particularly in DV) and to secure long term placement for offal products in both DE and DV. He reviewed four options:

- Building our own plant (estimated cost of $28,000,000)
- Sell Selbyville's offal to Perdue at a savings over current contract of $412,870/year
- Send both Selbyville and Millsboro to JCR for estimated savings of $674,000/year

MC017487

3



# DE 2012 v 2013

- Yard Time
- DOA
- Head Killed
- Packed #
- Inspected Paws % LWT
- Plant Yield
- WOG Yield
- Yield Comparison
- Processing Cost
- Tray Pack #
- Cone debone #
- 2nd Processing Labor Index
- Yield Value
- Plant Impact YMOP
- WOGs/MH in 1st Processing
- Live Wt
- 2013 DE Challenges

MC017532

8. Joe gave a Resource Recovery project update. Start-up is scheduled for 11/15/11 and completion of waste water upgrades at Millsboro is scheduled for 6/15/12. He also reviewed Agri Stats on rendering.

completion of waste water upgrades at Millsboro is scheduled for 6/15/12.

Mountaire Corporation Executive Committee Meeting, June 7, 2000. MC017442.

Mike reviewed the resource recovery plant including the handling of Millsboro material as well as Selbyville, upcoming projects which will be completed by August 15, 2012. Official testing was conducted mid-May with results due mid-June. He reviewed sales status and advised we are using all fat internally. He presented the P/L projection of $755,560 at fiscal year end, and advised we are recovering an additional annualized $878,515 for freight savings — both processing plants combined.

Mike reviewed the resource recovery plant including the handling of Millsboro material as well as Selbyville.

Mountaire Corporation Executive Committee Meeting, June 5 and 6, 2012. MC017512.

Mike T. reviewed Millsboro land situation. Townsend plans to quit farming after this year. We want to lease land to a farmer who will work with us to insure correct crops are planted. Mike reviewed both Delmarva and Delaware sludge disposal needs. He will immediately begin sludge application permits for our land south of Highway 24 and for the Frame and Cordrey parcels (which we own but are not permitted). He and Dave will also begin negotiating with Townsend for the Hurdle property and the property east of Swan Creek.

Mike T. reviewed Millsboro land situation.

Mike reviewed both Delmarva and Delaware sludge disposal needs. He will immediately begin sludge application permits for our land south of Highway 24 and for the Frame and Cordrey parcels (which we own but are not permitted). He and Dave will also begin negotiating with Townsend for the Hurdle property and the property east of Swan Creek.

Mountaire Corporation Executive Committee Meeting, March 5, 2003. MC017467.

5