**Luca MINNA and Laura Garrone, Defendants–Below, Appellants,**

v.

**ENERGY COAL S.p.A. and Italiana Coke, S.p.A., Plaintiffs–Below, Appellees.**

**No. 267, 2009.**

Supreme Court of Delaware.

Submitted: Sept. 2, 2009.

Decided: Nov. 16, 2009.

Reargument Denied Dec. 7, 2009.

---

8. *Fuller v. State,* 844 A.2d 290 (Del.2004).

9. *Id.* at 292 (internal citation omitted).

John L. Reed, Esquire (argued) and Denise Seastone Kraft, Esquire, Edwards Angell Palmer & Dodge LLP, Wilmington, DE, for appellants.

Christian Douglas Wright, Esquire, Mary F. Dugan, Esquire, and James L. Higgins, Esquire, Young Conaway Stargatt & Taylor LLP, Wilmington, DE; Of Counsel: Joseph De Simone, Esquire (argued) and Michelle J. Annunziata, Esquire, Mayer Brown LLP, New York City, for appellees.

Before BERGER, JACOBS and RIDGELY, Justices.

BERGER, Justice:

In this appeal we consider whether the Court of Chancery abused its discretion by entering a default judgment and other sanctions against appellants. The trial court entered several discovery orders, which appellants did not obey. The court then ordered appellants to pay appellees' reasonable attorneys' fees incurred in compelling discovery. Appellees ignored that order as well. The Court of Chancery had warned appellants that it would enter a default judgment if they failed to obey its fee order. After hearing appellants' explanation, reviewing their history of discovery abuses, and concluding that lesser sanctions would be ineffective, the trial court entered the default judgment. The record in this case fully supports the trial court's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

Luca Minna and Laura Garrone have been friends and business partners for many years (except where the context requires otherwise, Minna and Garrone will be referred to collectively as Minna). In 2000, they formed Carbon Power USA Corporation. Garrone and Minna each invested $1 million and became 50% stockholders, as well as officers and directors of Carbon Power. In 2004–2005, Minna induced the principals of Energy Coal, S.p.A. and Italiana Coke, S.p.A. (collectively, Energy Coal) to invest approximately $12.5 million in two Delaware companies— Cobart, Inc. and Oripaya Mining, Inc.— formed to pursue investment opportunities in the coal mining industry. In 2006, Energy Coal became concerned about Minna's failure to provide documentation or other information explaining what happened to Energy Coal's money.

In October 2007, Energy Coal's representative on the Cobart and Oripaya boards made a formal demand for inspection of books and records under 8 Del. C. § 220. Although Minna provided some information, the records did not address Energy Coal's concerns. As a result, Energy Coal resorted to litigation. First, in January 2008, Energy Coal filed an action in Superior Court against Carbon Power. That suit alleged that Carbon Power failed to pay approximately $925,000 due under an agreement executed in 2007. Energy Coal also filed two actions for books and records in the Court of Chancery under 8 Del. C. § 220, seeking the records that Minna failed to provide voluntarily. Finally, in May 2008, Energy Coal filed this action, alleging fraud, breach of fiduciary duty, conversion and other claims against Minna and Garrone. The complaint sought more than $12 million in compensatory damages.

In October 2008, shortly after Minna failed to respond to Energy Coal's first discovery requests, the parties agreed to settle all four Delaware actions for approximately $10 million. The settlement agreement, dated December 5, 2008, provides that Carbon Power, or its affiliates or assignees, will, among other things, wire transfer to Energy Coal: (1) $500,000 no later than December 15, 2008; and (2) $7 million no later than December 30, 2008. When the first payment failed to arrive, Energy Coal filed a motion to enforce the settlement agreement.

The Court of Chancery held a conference on December 30, 2008, to consider Energy Coal's motion. Counsel for Minna explained that his client had arranged for the first wire transfer, but that some of the numbers for the accounts were transposed and the transfer never went through. Counsel said that his client

would "set that up again."[1] After pointed questions from the trial court, counsel admitted that Minna needed more time to get the money, and counsel suggested that the enforcement proceeding be delayed. The trial court scheduled Energy Coal's motion to enforce the settlement to be heard on February 12, 2009, and entered an order setting dates for the production of documents and the depositions of Minna and Garrone, among other things.

On January 12, 2009, the date on which document production was due, Minna advised Energy Coal that he would not be producing documents concerning his ability or intention to perform under the settlement agreement, and that Garrone would not be able to travel to the United States for her deposition because her passport expired on December 20, 2008. Energy Coal responded with another motion to compel, which was heard on January 20, 2009. The trial court found that: 1) Minna's objections to the discovery were "not close to properly being interposed under a Rule 26 relevancy standard;"[2] and 2) Garrone's alleged passport problem was "a ridiculous story that ... is not excusable."[3] The court granted Energy Coal's motion to compel. It ordered that documents be produced by January 30, 2009; that Garrone's deposition be taken in Italy, (with Garrone bearing all expenses)[4]; and that Minna's counsel certify that counsel took all steps necessary to obtain documents, emails, and other information responsive to the discovery requests.

Minna started producing some documents on January 30th, but several important categories of documents were missing, and counsel was unable or unwilling to make the certification required by the trial court. For that reason, and others that counsel could not divulge, Minna's counsel sought permission to withdraw. At a February 4, 2009 teleconference, the trial court granted counsel's motion to withdraw and pushed the trial date back to early March. The court concluded the conference by warning, "Get the transcript (of this conference) to your clients and ... explain to them what a default judgment motion is. Because, frankly, if they fail to sit for their depositions and really mount a defense, that's the next thing that will happen."[5]

Energy Coal deposed Minna and Garrone in early February, but learned nothing about the purported transfer of all of their Carbon Power stock to a company named Bosani Enterprises, Inc. That information was critical because Minna was taking the position that, under the settlement agreement, Carbon Power was the only entity responsible for any payments. Energy Coal filed a motion for a default judgment on February 16, 2009, and the trial court considered the motion at a conference on February 25, 2009.

The trial court began the conference by asking for the missing information about the transfer of Minna's stock in Carbon Power. Counsel did not have the documents or the information, and trial was scheduled to begin in five days. But the

1. Appellants' Appendix, A38. As present counsel acknowledges, the "transposed numbers" explanation was untrue. No wire had been sent. The statement that Minna and Garrone would set up the transfer again, likewise, was false.

2. Appellants' Appendix, A 54–55.

3. Appellants' Appendix, A 55.

4. Not surprisingly, in light of the significant expense Garrone would have incurred, she obtained a new passport and came to New York for her deposition.

5. Appellants' Appendix, A 75.

trial court did not enter a default judgment, as had been requested by Energy Coal. Instead, the court ruled that Minna must provide the missing documents and be redeposed. In addition, Minna was required to pay Energy Coal's attorneys' fees. Failure to do so, the court warned, would result in a default judgment. The order, entered by the trial court on March 4, 2009, modified the court's oral ruling in Minna's favor. The fee award related only to the period after the date of the settlement agreement, and Minna was required to pay only that portion of the fees that Minna determined were reasonable. As to any amounts Minna contested, he was required to file a certification stating the basis for his objection.

Minna filed a motion for reconsideration on March 11, 2009, and paid no portion of Energy Coal's fees, as required by the March 4th order. The trial court considered Minna's motion on April 8, 2009. At that hearing, Minna argued for the first time that neither he nor Garrone had enough money to pay the $400,000 in attorneys' fees that they agreed were reasonable. Minna never submitted an affidavit supporting his claimed lack of financial resources, and, as the trial court found, he made no good faith effort to comply with the court's fee award sanction. Minna's counsel's explained, "Well, my biggest concern was that they came forward with any payment. Let's assume it was $75,000, . . . and the Court still decided to default them out. I mean, they basically got nothing for the 75. . . ."[6] After considering the parties' positions, the court entered an order and final judgment against Carbon Power, Minna and Garrone, jointly and severally, in the amount of $10,906,195.37 together with post-judgment interest at the statutory rate of 5.50% compounded quarterly. This appeal followed.

## DISCUSSION

■ Minna argues that the trial court abused its discretion in awarding more than $700,000 in attorneys' fees for discovery violations and by entering a $10 million default judgment enforcing the settlement agreement. Minna also contends that the trial court erred in ruling that his motion for reconsideration of the March 4, 2009 order was untimely. We find no merit to these arguments, and affirm.

The short answer to Minna's fee award argument is that he waived it. The trial court required Minna to pay the fees incurred by Energy Coal in attempting to obtain court-ordered discovery. The award was a sanction, properly entered pursuant to Chancery Court Rule 37. Minna acknowledges that such an award is permitted, but complains that the trial court failed to determine whether the amount was reasonable. In advancing this argument, Minna overlooks the fact that the trial court ordered Minna to pay only those amounts that Minna conceded were reasonable. Thus, there was a method by which this issue could have been presented to, and resolved by, the trial court. Minna acknowledged that more than $400,000 in fees were reasonable, but made no payment.

■ The trial court concluded that, by failing to pay the admittedly reasonable fees, and failing to provide evidence that he was financially unable to pay those fees, Minna waived his right to contest the award. We agree. Waiver is the intentional relinquishment of a known right.[7] Minna knew that he could contest the al-

---

6. Appellants' Opening Brief, Ex. D at 15.

7. *AeroGlobal Capital Management, LLC v. Cirrus Industries, Inc.*, 871 A.2d 428, 444 (Del. 2005).

legedly excessive fees if he paid those amounts that he conceded were reasonable. He chose not to make any payment, and thereby waived any objection to the award entered by the trial court.

■ Minna claims more strenuously that the trial court abused its discretion in entering a default judgment against all signatories to the settlement agreement, jointly and severally. He argues that, because a default judgment is the most extreme sanction, it should be used sparingly, and only in cases where the sanctioned parties demonstrate willfulness or a conscious disregard for the court's orders. Here, because no documents were falsified or destroyed, and because Minna produced thousands of pages of documents, Minna contends that such an extreme sanction was unwarranted.

■ In deciding whether a trial court abused its discretion when sanctioning a party, this Court has adopted the following guidelines:

> [T]o determine whether the trial court has abused its discretion in dismissing, or refusing to lift a default, we will be guided by the manner in which the trial court balanced the following factors, ... and whether the record supports its findings: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.[8]

Before ruling, the trial court reviewed several pertinent facts (not contested by Minna):

1) At the time Minna induced Energy Coal to enter into the settlement agreement, Carbon Power did not have the liquid assets to pay the $10 million;

2) At the time Minna induced Energy Coal to enter into the settlement agreement, Minna no longer owned any stock in Carbon Power. The new owner has no obligation to pay for that stock until 2010, and Minna, apparently retains full control over the company and its assets.

3) Minna misrepresented to the trial court that, under the settlement agreement, he and Garrone would own all of Atlantic Coal's assets (which meant that they were the principals on the other side of the agreement).

4) Minna misrepresented to the trial court that the first payment under the settlement agreement had been wire transferred to Energy Coal, but had not arrived because of a mistake in one of the numbers. In fact, no transfer was initiated because Minna did not have the money he was expecting to receive from a third party.

5) Despite repeated orders, Minna still has not revealed the identities of the stockholders of Bonsani Enterprises, Inc., the purported owner of Carbon Power.

The trial court found that Minna and Garrone "willfully flouted" their obligations to the court:

> [W]hen people, through their agents, through themselves, tell courts things that are false, and then the Court orders—doesn't jump to any kind of judgment, orders discovery, and they refuse it, the Court is not in a particularly good

---

**8.** *Hoag v. Amex Assurance Co.,* 953 A.2d 713, 718 (Del.2008) (quoting *Poulis v. State Farm* *Fire & Cas. Co.,* 747 F.2d 863, 868 (3d Cir. 1984)).

place. . . . Certainly, my view, the record is pretty clear: Garrone and Minna were personally responsible for the improper conduct. They caused their adversary . . . prejudice, in the form of excessive attorneys' fees, . . . they had given up one claim to do another settlement. Now they are trying to collect, and you can't even figure out how to proceed, given the myriad of stories that are being told. There was clearly a history of dilatoriness. . . .

Then you have the effect of what do we do other than dismissal? This is a big factor. How many motions to compel are we supposed to lay down? I'm supposed to have—every Friday, we meet with the parties in the Energy Coal case to have additional sanction put on Minna and Garrone?

\* \* \*

Part of what I took into account is Energy Coal has suffered, already, real financial consequences by virtue of the misbehavior of Minna and Garrone. And I thought, and I continue to believe, that it's a reasonable condition of Minna and Garrone, defending on the merits that they at least pay the fees that they concede were reasonably incurred by the other side as a result of their misbehavior. . . . [T]here is over $400,000 that they concede is reasonably incurred. In my view, that was all because of the bad faith, willful disregard of this Court's orders, by Minna and Garrone.

They refused to make even one dime of payment. . . . I am going to order the full amount that was requested of the attorneys' fees by the other side. I will explain why I'm doing that. . . . We are not going to have side shows at this point. They don't want to pay or make even one good-faith payment toward what they concede is reasonable? I'm going to have further adjudication [as to the amount of fees] and make Energy Coal put good money after bad, and the Court to also incur further time? I'm not going to do that. I believe it's essentially a waiver. You don't want to play by the rules. . . . Then there are consequences.

The trial court also considered the merits of enforcing the settlement agreement against Minna and Garrone. Without the missing discovery, it is impossible to determine whether they are "affiliates" within the meaning of the agreement. Nonetheless, the trial court noted that the record would support a claim of fraud in the inducement against Garrone and Minna. The trial court indicated a willingness to hear such a claim if the matter proceeded to the merits.[9]

In sum, the trial court evaluated all of the *Hoag* factors and appropriately decided that this was one of those rare cases where the extreme sanction of a default judgment is warranted. We find no abuse of discretion.

### CONCLUSION

Based on the foregoing, the judgment of the Court of Chancery is hereby AFFIRMED.

---

9. In light of our decision, we need not reach the issue of whether Minna's motion for re-

consideration was untimely.