**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

DG BF, LLC, a Delaware limited liability company, individually and derivatively on behalf of AMERICAN GENERAL RESOURCES LLC, a Delaware limited liability company; and JEFF A. MENASHE, individually and derivatively on behalf of AMERICAN GENERAL RESOURCES LLC, a Delaware limited liability company,

           Plaintiffs,

    v.

MICHAEL RAY, an individual, and VLADIMIR EFROS, an individual, and AMERICAN GENERAL RESOURCES, LLC, a Delaware limited liability company,

           Defendants,

    and

AMERICAN GENERAL RESOURCES LLC, a Delaware limited liability company,

           Nominal Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 2020-0459-MTZ

## ORDER OF DISMISSAL

**WHEREAS**, having considered and granted Defendants' numerous discovery motions against Plaintiffs;[1] and having taken under advisement

---

[1] Those motions include Docket Item ("D.I.") 146, Defendants' Motion to Compel, granted at D.I. 183; D.I. 180, Defendants' Motion to Compel Proper Deposition, granted at D.I.

1

Defendants' penultimate Expedited Renewed Motion to Compel and for Sanctions Against Plaintiffs,[2] their final Motion for Sanctions for Spoliation of Evidence as fully briefed,[3] and their letter advising the Court of Plaintiffs' failure to comply with this Court's August 23, 2021 ruling,[4] it appears:

A.      Plaintiffs Jeff A. Menashe and his investment vehicle, DG BF, LLC ("DG BF") brought this action claiming that in the spring of 2019, Defendants Michael Ray and Vladimir Efros fraudulently induced Plaintiffs into investing in nominal defendant American General Resources LLC ("AGR" or the "Company"); that after Plaintiffs invested, Company executives ignored Plaintiffs' governance rights; and that after Plaintiffs sued, the Company retaliated against them, improperly removing Menashe as the manager of DG BF's investment series and eliminating a profitable investment banking relationship Menashe's affiliate had with the Company.  Plaintiffs filed their initial complaint on June 11, 2020, and followed with an amended complaint on August 11.[5]

---

204; and D.I. 189, Defendants' letter advising of Plaintiffs' failure to comply with D.I. 183.

[2] D.I. 212.

[3] D.I. 225; D.I. 237; D.I. 242.

[4] D.I. 231.  Plaintiff DG BF, LLC's affiliate, Demeter Group Holdings, LP, also filed a motion to quash.  D.I. 234.

[5] D.I. 1; D.I. 49.

B.     Plaintiffs had some initial success at the pleading stage.  The matter was expedited at Plaintiffs' request, and on July 6, the Court granted Plaintiffs' motion for a temporary restraining order regarding a subsequent financing round.[6]  But on July 9, the Court found for Defendants on Plaintiffs' claim regarding that financing, and terminated the temporary restraining order.[7]  Defendants moved to dismiss,[8] Plaintiffs withdrew some claims,[9] and the Court trimmed Plaintiffs' claims further on March 1, 2021.[10]

C.     On March 30, the Court entered a stipulated scheduling order that specified Plaintiffs' document production would begin no later than thirty days after receipt of discovery requests; substantial completion of document production by June 11; expert identification by June 18; completion of fact, third party, and expert discovery by August 25; and trial on September 15–17.[11]  Defendants served their discovery requests that same day, beginning a volley of discovery requests countered by responses and objections that lasted through May.[12]

---

[6] D.I. 33.

[7] D.I. 35.

[8] D.I. 37.

[9] D.I. 105.

[10] *DG BF, LLC v. Ray*, 2021 WL 776742 (Del. Ch. Mar. 1, 2021).

[11] D.I. 120.

[12] D.I. 121.

D.     Plaintiffs produced some documents on May 7.[13]   Plaintiffs did not collect or image Menashe's cell phone or laptop; any server on which DG BF stored electronic documents; or laptops and email accounts used by Menashe's colleagues at his investment firm, Demeter Group ("Demeter"), who were involved in DG BF's investment in AGR.  Plaintiffs were unwilling or unable to provide a comprehensible hit report.  Defendants began to ask about these issues in May, but the June 11 substantial completion deadline came and went without Plaintiffs producing any more documents.

E.     Plaintiffs' repositories of electronic documents proved elusive. Menashe testified he did not know what a litigation hold was, and did not advise his Demeter colleagues to preserve documents or collect their data when they left Demeter.[14]  The Demeter laptops used when negotiating DG BF's investment in AGR were particularly confounding.  Plaintiffs' counsel repeatedly disclosed that those laptops had been wiped and donated, but eventually the laptops were found and given to Plaintiffs' counsel.[15]

---

[13] *See* D.I. 146, Ex. 19 (describing how "Menashe's IT team" applied search terms to his email and conducted a search for "AGR" or "Bloom"); D.I. 212, Ex. 2 at 28–30 (explaining that Menashe is the only person at Demeter and that Menashe personally supervised the collection).

[14] D.I. 225, Ex. 1 at 32–33, 44–50.  But Plaintiffs issued a detailed litigation hold to Defendants, and Defendants issued one to Plaintiffs.  D.I. 225, Exs. 18, 19.

[15] D.I. 146, Ex. 18 (disclosing on May 25, 2021, that the Demeter laptops were donated when the custodians left Demeter in January 2020 and December 2020; also disclosing Menashe's laptop is "less than two years old" and updated every two years, and that his

4

F.     As for Menashe, he obtained a new laptop in or about February 2020, and donated the one he had used during due diligence on his Company investment.[16] Menashe used text messaging to conduct AGR business, but continued his practice of actively deleting his text messages through the pendency of this litigation.[17] Menashe testified that he did not text about business matters, but that testimony was undermined by texts Defendants produced; when confronted, Menashe then testified he deleted all such messages.[18]

G.     In seeking to avoid reviewing laptops and Menashe's text messages, Plaintiffs insisted that "the relevant data is primarily stored on Demeter Group servers." [19] There was a folder on that server named after AGR's operating entity, "Bloom Farms."[20] But Plaintiffs did not search that folder or server.

H.     Plaintiffs' written discovery responses fared no better. They refused to answer several core questions, including to identify the due diligence they performed

---

personal devices have not been collected and that he "does not retain text message communications on his cell phone"); *id.* Ex. 19 (disclosing on June 9 that one Demeter laptop was donated in February 2020, and the other was donated in January or February 2021); D.I. 225, Ex. 1 at 42–43 (Menashe on July 27 testifying that he wiped and donated his own work laptop, but that one of his Demeter colleagues had both Demeter laptops).

[16] D.I. 146, Exs. 18, 19; D.I. 225, Ex. 1 at 42–43.

[17] D.I. 146, Exs. 18, 19; D.I. 225, Ex. 2 at 223.

[18] D.I. 225, Ex. 11; *id.* Ex. 2 at 222–24.

[19] D.I. 146, Ex. 18; *accord* Ex. 19 (noting "[a]ll of [Menashe's] files are stored on the Demeter Group servers and would be available there instead").

[20] D.I. 225, Ex. 2 at 155–57; D.I. 212, Exs. 4, 5.

relating to DG BF's investment in AGR, and to identify the material omissions Plaintiffs contend were concealed and the financial statements or projections that Plaintiffs believed included misrepresentations.[21]

I. Plaintiffs also struggled to produce a complete and adequate privilege log. Their first privilege log, produced on June 11, was wholly deficient; after motion practice and at the Court's insistence, Delaware counsel oversaw the production of a compliant privilege log.[22] But the log would never be updated beyond Plaintiffs' initial production.

J. Rather than focusing on discovery, Plaintiffs engaged in motion practice, filing a motion to appoint a receiver over AGR (which Plaintiffs withdrew after Defendants moved to strike it)[23] and two motions to extend the scheduling order (which Defendants briefed and which were denied for failure to establish excusable neglect).[24] Plaintiffs also took time to amend their nearly identical complaint in a parallel action pending before the Supreme Court of the State of New York.[25]

---

[21] *See* D.I. 183.

[22] *See* D.I. 206.

[23] D.I. 147; D.I. 152; D.I. 184.

[24] D.I. 158; D.I. 166; D.I. 182; D.I. 195; D.I. 202.

[25] D.I. 212, Ex. 9.

K.  On July 2, Defendants moved to compel.[26]  Plaintiffs opposed the motion without offering any substantive grounds for their opposition.[27]  Plaintiffs explained that staffing or supervisory issues at Plaintiffs' forwarding counsel had impeded compliance with the scheduling order and their discovery obligations.

L.  On August 3, I ordered Plaintiffs to specify a deadline by which they would collect and image Menashe's cell phone and laptop; the electronic repositories for his Demeter colleagues; and any server on which DG BF stored electronic files (the "Key Repositories").[28]  Plaintiffs were ordered to provide hit reports to aid in finalizing search terms, and to produce all hit documents to Defendants to review at Plaintiffs' cost.  Plaintiffs were also ordered to respond to specific written discovery requests, and to provide a compliant privilege log.  The Court specified that self-collection was strictly prohibited, and encouraged greater participation by Delaware counsel.

M.  Plaintiffs did not comply.  The Court was required to give Plaintiffs more guidance on August 12.  At that hearing, Plaintiffs' counsel stated that Menashe's cellphone was being imaged "right now."[29]  With Delaware counsel taking a more active role and promising improvements, the Court worked with

---

[26] D.I. 146.

[27] D.I. 172.

[28] D.I. 183; D.I. 201 at 36–42.

[29] D.I. 239 at 15.

Plaintiffs and ordered them to file a stipulation by the end of the day with concrete deadlines for getting the Key Repositories to Defendants' vendor so that discovery could be complete in advance of looming depositions.[30] Plaintiffs did not file any such stipulation, and related a series of delays and technical problems in imaging the Key Repositories. On August 16, Plaintiffs' counsel stated that hits in the Bloom Farms folder on the Demeter server would be produced, declining to image and search the entire server as ordered.[31] On August 17, Plaintiffs' counsel told Defendants' counsel that "the vendor was unable to successfully image Mr. Menashe's cell phone and laptop," and that new equipment was on its way to the vendor.[32]

N. On August 18, Defendants moved to compel Plaintiffs' deficient written and document discovery by a deadline, with dismissal on the line if the deadline was missed, and for sanctions for Plaintiffs' failure to comply with this Court's August 3 and August 12 directives.[33] The parties briefed that motion and the Court heard it on August 23.[34] At this point, the depositions of Menashe, his colleagues, and key players at AGR were noticed for the coming days, and trial was

---

[30] *Id.* at 18–21.

[31] D.I. 212, Ex. 5.

[32] *Id.*

[33] D.I. 212; D.I. 214.

[34] D.I. 217; D.I. 221; D.I. 227.

three weeks away. Plaintiffs had produced documents from the Demeter laptops, but had not completed imaging the Demeter server or Menashe's laptop, and—remarkably—had not yet even begun imaging Menashe's cell phone, as Menashe himself had been unable to identify a business in his locale of Helena, Montana that could perform the task.[35]

O.     On August 23, the Court held Plaintiffs in contempt.[36]  The Court ordered the images of the Demeter server and Menashe's laptop be produced to Defendants' vendor for Defendants' attorneys-eyes-only review until a deadline passed for Plaintiffs to claw back privileged documents by properly logging them, and for Menashe's cell phone to be provided for Defendants' remote imaging or overnighted to Defendants, at Defendants' election, subject to the same clawback procedure. The Court also ordered all documents withheld on the basis of privilege, but not yet logged, to be produced to Defendants on an attorneys-eyes-only basis until that same clawback-by-log period passed. Finally, as to written discovery, the Court deemed a request for admission admitted, and ordered that Plaintiffs were precluded from offering at trial any financial statement or projection that Plaintiffs believed misleading that was not explicitly identified in Plaintiffs' discovery

---

[35] D.I. 247 at 16–17.

[36] *Id.* at 29–34.

responses. The Court indicated an adverse inference was warranted, and took the scope of that inference, and the potential for dismissal, under advisement.

P.     Plaintiffs' discovery failures were not limited to written discovery and document production. Plaintiffs' forwarding counsel was extremely obstructive at the Court of Chancery Rule 30(b)(6) deposition of Menashe as DG BF's representative on document retention.[37] Defendants were again forced to resort to motion practice, and were awarded a second deposition on August 17.[38] Defendants were also awarded fees for their motion practice.

Q.     On August 25, Defendants wrote the Court to relate that their vendor had yet to receive the server image, the laptop image, or Menashe's cell phone, and that they had not been shipped within the Court-ordered timeframe.[39] That same day, Demeter filed a motion to quash production of the server image.[40] And again,

---

[37] D.I. 180, Ex. 1.

[38] D.I. 180; D.I. 196; D.I. 197; D.I. 204 (noting forwarding counsel, like the counsel at issue in *Paramount Communications Inc. v. QVC Network Inc.*, 637 A.2d 34, 53 (Del. 1994) "(a) improperly directed the witness not to answer certain questions; (b) was extraordinarily rude [and] uncivil . . . ; and (c) obstructed the ability of the questioner to elicit testimony to assist the Court in this matter"; and noting Delaware counsel was expected to put an end to the misconduct, but did not). Forwarding counsel was ordered to submit a certification that he had reviewed, or re-reviewed, the Statement of Principles of Lawyer Conduct, and the Court's 2021 Guidelines To Help Lawyers Practice In The Court Of Chancery. *Id.* Forwarding counsel failed to submit that certification as requested; the Court only received a letter from Delaware counsel representing that forwarding counsel had completed that task. D.I. 211.

[39] D.I. 231.

[40] D.I. 234. Demeter's August 25 motion relates that imaging was still in process and would take another "day or two," *id.*, even though Plaintiffs' counsel told the Court on

10

rather than attending to their own obligations, Plaintiffs took countermeasures, demanding on August 24 that *Plaintiffs* image *AGR*'s server "for all financial records going back to when Jeff invested in the company."[41]

R.     Defendants ultimately sent Menashe's cell phone to Defendants' vendor, and provided them the image of his current laptop.[42]  But when Menashe shipped his phone to Defendants' vendor, he included a letter instructing the vendor not to provide Defendants' counsel with any correspondence between Menashe and thirty-four individuals, or Menashe's photos or videos.[43]

S.     On August 27, I informed the parties that the matter would be dismissed, that judgment would be entered in favor of Defendants, and that the trial scheduled for September 15 to 17 was cancelled.[44]  I advised that a formal explanation of my decision would follow.  This order provides that explanation.

T.     "Trial courts should be diligent in the imposition of sanctions upon a party who refuses to comply with discovery orders, not just to penalize those whose

---

August 23 that the imaging would be complete "before the close of business today or certainly by tomorrow."  D.I. 247 at 16.

[41] D.I. 231, Ex. 9 ("Our IP company wants to image your client's server for all financial records going back to when Jeff invested in the company.  Let us know before close of business tomorrow when our IP company can come in and image that server.  Thank you.").

[42] D.I. 237.

[43] D.I. 244.

[44] D.I. 243.

11

conduct warrants such sanctions, but to deter those who may be tempted to abuse the legal system by their irresponsible conduct."[45]

> Rule 37(b)(2) identifies potential sanctions that a trial court can impose for violating a discovery order, including but not limited to:
>
> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
>
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; [or]
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.][46]

U.      Spoliation may also warrant dispositive sanctions, including dismissal

of claims or imposition of an adverse inference,

> where a party acts to intentionally or recklessly destroy evidence, when it knows that the item in question is relevant to a legal dispute or it was otherwise under a legal duty to preserve the item. Delaware courts have defined recklessness in the spoliation context as a conscious awareness of the risk that one's action or inaction may cause evidence to be despoiled. Intentional destruction simply means that the spoliator acted with purpose.[47]

---

[45] *Hoag v. Amex Assurance Co.*, 953 A.2d 713, 717 (Del. 2008) (quoting *Holt v. Holt*, 472 A.2d 820, 824 (Del. 1984)).

[46] *James v. Nat'l Fin. LLC*, 2014 WL 6845560, at *8 (Del. Ch. Dec. 5, 2014) (quoting Ct. Ch. R. 37(b)(2)).

[47] *TR Invs., LLC v. Genger*, 2009 WL 4696062, at *17 (Del. Ch. Dec. 9, 2009) (internal citations and quotation marks omitted), *aff'd*, 26 A.3d 180 (Del. 2011).

. . .

The remedial inquiries relevant to the contempt and spoliation claims are similar. A court has inherent power to fashion a remedy for contempt that is proportionate to the level of harm committed so long as the court exercises restraint. In determining what remedy to award for spoliation, the court should consider: (1) the culpability of the spoliating party; (2) the degree of prejudice suffered by the aggrieved party; and (3) the availability of lesser sanctions that could both avoid unfairness to the aggrieved party and serve as an adequate penalty to deter such future conduct.[48]

V.     The ultimate sanction for contempt, which must be used sparingly, is the entry of a default judgment against the contumacious party.[49] "[A] default judgment should be granted if no other sanction would be more appropriate under the circumstances."[50] "[T]here must be an element of willfulness or conscious disregard of a court order before entry of judgment is warranted."[51]

W.     When evaluating whether to enter or vacate a default judgment, this Court generally considers the following factors:

---

[48] *Id*. at *18 (internal citations omitted).

[49] *Minna v. Energy Coal S.p.A.*, 984 A.2d 1210, 1215–16 (Del. 2009); *Lehman Cap. v. Lofland*, 906 A.2d 122, 131 (Del. 2006).

[50] *Hoag*, 953 A.2d at 717.

[51] *Gallagher v. Long*, 940 A.2d 945, 2007 WL 3262150, at *2 (Del. 2007) (TABLE); *accord Sundor Elec., Inc. v. E.J.T. Constr. Co.,* 337 A.2d 651, 652 (Del. 1975).

(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure [to comply]; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.[52]

**IT IS HEREBY ORDERED**, this 19th day of November, 2021:

1.       Plaintiffs are in contempt of this Court's August 3, August 12, and August 23 discovery orders.  They undisputedly were bound by the orders, had notice of them, and nevertheless violated them.  They did not set a deadline to collect and image the Key Repositories or respond to written discovery as ordered on August 3.  They did not stipulate to a deadline for submitting the Key Repositories to a vendor as ordered on August 12.  They did not provide the image of the Demeter server to Defendants.  And they were prejudicially late in providing the image of Menashe's laptop and Menashe's cell phone, in violation of the August 23 order.  After this pattern of contumacious behavior, Menashe then attempted to thwart the Court's order to turn his cell phone over to Defendants' vendor, directing the vendor to restrict the material given to Defendants' counsel.

2.       Plaintiffs, and specifically Menashe, spoliated evidence in Menashe's text messages and on the laptop he used during due diligence.  Plaintiffs were under

---

[52] *Connection, Inc. v. Synygy Ltd.*, 2021 WL 1943350, at *3 (Del. Ch. May 11, 2021) (quoting *Hoag*, 953 A.2d at 718, and citing *Minna*, 984 A.2d at 1215).

a legal duty to preserve relevant evidence from at least the date they filed this suit, and received a litigation hold notice from Defendants. Their spoliation was not negligent; Menashe's destruction of his text messages, which persisted through two depositions about DG BF's recordkeeping, was intentional.

3. Plaintiffs' contempt and spoliation caused Defendants incredible prejudice. The only way Defendants would obtain Plaintiffs' discovery material in advance of trial was to review it themselves in the final days before trial, while preparing for depositions without the benefit of that discovery material.

4. Each *Minna* factor supports entering a default judgment as a sanction.

a. <u>Party Responsibility for Failure to Comply</u>. Plaintiffs have nobody to blame but themselves. Plaintiffs' failure to meet their discovery obligations began with their early partial collection and failure to preserve Demeter repositories, and ended with Menashe's spoliation of his text messages and attempt to thwart this Court's orders regarding his cell phone.

b. <u>Prejudice to Defendants</u>. As mentioned, Defendants have suffered significant prejudice as a result of Plaintiffs' contempt and spoliation, and would have suffered incredible prejudice had the matter not been halted days before trial.

c. <u>History of Dilatoriness</u>. While Plaintiffs bombarded Defendants with discovery requests and motion practice, they completely ignored their

obligations to even image the Key Repositories until after the substantial completion deadline passed, and provided some of those images only after the Court thrice ordered them to do so. Even the simple order to overnight Menashe's cell phone to Defendants' vendor was not timely followed. Plaintiffs did nothing to tend to their affirmative obligations in this matter until after the deadlines passed, and could not demonstrate any excusable neglect; their delays were of their own making. After the Court got involved, Plaintiffs refused to comply with this Court's orders to set their *own* deadlines for their overdue discovery. Plaintiffs' dilatoriness has plagued this case.

d. <u>Willfulness and Bad Faith</u>. Plaintiffs have knowingly ignored the Court's clear and accommodating orders. Plaintiffs ignored their discovery obligations in bad faith, while heaping trouble and expense upon Defendants.

e. <u>Effectiveness of Sanctions Short of Dismissal</u>. The Court has been patient with Plaintiffs to a fault. The Court accommodated Plaintiffs when Defendants sought hard deadlines and Plaintiffs asked for flexibility. The Court gave Plaintiffs some grace and gave Delaware counsel the opportunity to lead Plaintiffs out of their morass of noncompliance. The Court entered nearly dispositive discovery sanctions, and noted it was considering an adverse inference and dismissal, but Plaintiffs continued to ignore their obligations and this Court's orders. Repeated fee-shifting for motion practice and DG BF's second 30(b)(6)

16

deposition, and allowing Defendants' counsel to review Plaintiffs' repositories at Plaintiffs' expense, had no effect. While Defendants have generously characterized this state of affairs as "a Menashe problem,"[53] I believe his counsel's approach of prioritizing bluster over substance has compounded the problem. It is clear that no sanction short of dismissal has been or would be meaningful.

   f. <u>Meritoriousness of Plaintiffs' Claims.</u> Plaintiffs' primary claim is for fraud. Plaintiffs' failure to answer written discovery substantially weakened that claim, as they declined to identify any omissions or misrepresentations in written discovery and so were precluded from offering any at trial. And even if Plaintiffs could still prevail on that claim here, Plaintiffs have filed a claim for fraudulent inducement in New York State based on these same facts, telling that court that New York state and federal courts "ha[ve] exclusive jurisdiction over any disputes 'arising out of, or relating to' the Purchase Agreement, ***including, without limitation, Plaintiff's claims that Defendants fraudulently induced it to enter into the Purchase Agreement***" by which it invested in AGR.[54] Plaintiffs withdrew all claims relating to that Purchase Agreement from this case.[55] Plaintiffs' remaining claims for breach of AGR's operating agreement due to AGR's corporate

---

[53] D.I. 247 at 25.

[54] D.I. 212, Ex. 9 ¶ 7 (emphasis added).

[55] D.I. 105.

governance practices offer only nominal damages, and do not support or seek any injunctive relief.

5.      All fees associated with discovery motions, with Defendants' review of Plaintiffs' repositories, and Defendants' counsel's exemplary attempts to meet and confer about discovery, are shifted to Plaintiffs.[56] The parties shall submit a briefing schedule to address the rest of Defendants' fees, as requested in their October 28 motion.[57] That fee motion shall be heard together with Defendants' fully briefed Motion to Recover Damages Resulting from Plaintiffs' Unlawfully Issued Injunction.[58]

*/s/ Morgan T. Zurn*
Vice Chancellor Morgan T. Zurn

---

[56] *Genger*, 2009 WL 4696062, at \*19; Ct. Ch. R. 37(b)(2).

[57] D.I. 250.

[58] D.I. 93.