**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

January 22, 2025

Andrew H. Sauder, Esquire
Dailey LLP
1201 North Orange Street, Suite 7300
Wilmington, DE 19801

Sean J. Bellew, Esquire
Bellew LLC
2961 Centerville Road, Suite 302
Wilmington, DE 19808

RE: ***Scarabee Holdings, LLC v. 4301 Operations, LLC, et al.*,**
Civil Action No. 2022-1207-MTZ

Dear Counsel:

This has been a high-touch case. Defendants 4301 Operations, LLC, and Brian Conners ("Defendants") strung plaintiff Scarabee Holdings, LLC ("Plaintiff") along in discovery, and Plaintiff sought help from this Court; I was patient, perhaps to a fault, and I gave Defendants the benefit of the doubt on multiple occasions. My tune changed when Defendants' former Delaware counsel took the difficult and commendable step of notifying the Court that their clients had repeatedly lied in sworn and represented filings about fundamental facts supporting their defense. Defendants also falsified evidence in furtherance of their lies. The falsity of those statements was borne out in a deposition. Defendants' misconduct presents the rare occasion when a default judgment is the only appropriate sanction.

## I.     Background

Plaintiff filed this action seeking a "Class B Preferred Return" payable annually under 4301 Operations' LLC agreement "to the extent that the Board determines there are sufficient operating funds."[1]   In discovery, Defendants told Plaintiff that 4301 Operations' board (the "Board") had never evaluated whether to pay the Class B Preferred Return, and indeed had never met.[2]

Plaintiff then filed an amended complaint adding a claim that Conners, as 4301 Operations' sole director, had failed to carry out his board obligations regarding the Class B Preferred Return.[3]   Defendants scrambled.   In their answer and subsequent discovery, they stated that "[o]n each December 31, 2019, December 31, 2020, December 31, 2021, December 31, 2022, and December 31, 2023, the Board, acting through Conners, as its sole Director, determined that there were insufficient operating funds to pay the Class B Preferred Return to

---

[1] Docket item ("D.I.") 108 Ex. 1 § 8.4(b).

[2] D.I. 108 Ex. 2 at Interrog. Resp. Nos. 3, 14; D.I. 28 ¶ 27 ("On information and belief, the Company's Board has . . . never even considered whether there were sufficient operating funds to pay the Class B Preferred Return.").

[3] D.I. 44.

Scarabee."[4]  Defendants represented twelve times in their answer that Conners made that determination in those years.[5]

Defendants went further.  They stated in their answer to the amended complaint that on May 5, 2024, between when the amended complaint was filed and when their answer was due, the board met and "ratified and confirmed" Conners' determinations.[6]  Defendants produced to Plaintiff purported meeting minutes, which again represented that "[t]he Board, acting through its sole Director, determined that there were insufficient funds to pay the Class B Preferred Return to the Class B Unit Holder" in 2019 through 2023.[7]  The minutes also represented that the board met in person on May 5; that defendant Theodore Broudy had been appointed to the 4301 Operations Board; that Conners had read a lengthy prepared statement describing 4301 Operations' financial situation each year a preferred return was owed; that Conners provided an historical overview of

---

[4] D.I. 52 ¶ 82; *see also id.* ¶¶ 21, 24, 34, 46–48, 59, 63, 70–72.

[5] *Id.* ¶¶ 21, 24, 34, 46–48, 59, 63, 70–72, 82.

[6] *E.g., id.* ¶ 24.

[7] D.I. 108, Ex. 10 at -1495–99.

his salary from 2009 to 2023; and that the board had ratified Conners' annual preferred return determinations and Conners' salary.[8]

Defendants kept their story going. In their July 5 responses and objections to Plaintiff's fourth set of interrogatories, Defendants continued to represent that "Conners evaluated and/or determined that there were insufficient operating funds to pay the Class B Preferred Return to Plaintiff on each December 31, 2019, December 31, 2020, December 31, 2021, December 31, 2022, and December 31, 2023."[9]

Defendants' representations of annual determinations and a May 5 board ratification were untrue. On July 31, Broudy was deposed, and his candid testimony gave the game away. He and Conners are very close personal friends, and Conners asked him to join the board as a favor after this litigation began.[10] To Broudy's credit, that favor did not include lying for Conners: Broudy testified there had been no May 5 board meeting, that Conners had never read the prepared statement in the minutes to him, and that Conners had never discussed with him

---

[8] *See generally id.* Defendants' counsel also made representations about Conners's supposed determinations in court. *See e.g.*, D.I. 99 at 27 ("Your Honor, the same rationale that were in the board minutes was the rationale that Mr. Conners used back in December 31st of 2019, 2021.").

[9] D.I. 108 Ex. 6 at Interrog. Resp. No. 8; *see also id.* at Interrog. Resp. Nos. 2–8, 10.

[10] D.I. 108 Ex. 7 at 38.

other topics the minutes said had been discussed.[11]  Broudy testified that even though he did not understand what the Class B Preferred Return was, he still signed the minutes' resolution purporting to ratify Conners's determinations.[12] Worse yet, discovery revealed the May 5 meeting minutes were prepared by Defendants' litigation counsel, word for word, two days before the meeting purportedly occurred.[13]

At this point, Defendants' former Delaware counsel responded commendably.  On August 12, they wrote the Court to disclose that Defendants' statements that Conners had annually evaluated the Class B Preferred Return were false.[14]  The letter noted that false statement appeared in Defendants' pleadings and written discovery.[15]  The misrepresentation appeared in Defendants' answer to the amended complaint, May 17 and July 5 supplemental interrogatory responses, July 5 request for production responses, two oppositions to discovery motions, and the May 5 meeting minutes.[16]  Defendants' former Delaware counsel also moved to withdraw, which I granted; on August 15, I gave Defendants thirty days to retain

---

[11] *Id.* at 18–19, 25–26, 53–56, 70–71, 104, 117, 176.

[12] *Id.* at 74–75, 107.

[13] D.I. 108 Ex. 8.

[14] D.I. 86.

[15] *Id.* at 2.

new counsel.[17] Defendants requested an extension to find new counsel, which I denied.[18]

Plaintiff responded with a second amended complaint, adding Broudy as a defendant.[19] Defendants missed the Court's deadline for retaining new counsel and failed to timely respond to the complaint.[20] Defendants then sat silent for months until Plaintiff filed this motion for default judgment.

Some additional context is necessary. On the path to our present situation, I twice addressed Defendants' discovery shortcomings with intermediate sanctions, giving them the benefit of the doubt. Conners had engaged in self-collection, first alone and then with minimal input from his counsel, and used unilaterally chosen search terms.[21] Defendants' collections from other custodians were delayed by meritless objections.[22]

Defendants raised the May 5 ratification defense for the first time near the close of discovery. Plaintiff cried foul, moving to preclude that defense as

---

[16] *Id.*; D.I. 108 Ex. 5.

[17] D.I. 92.

[18] D.I. 94; D.I. 96.

[19] D.I. 101.

[20] D.I. 92.

[21] *See* D.I. 84.

[22] *See id.*

untimely and inconsistent with Defendants' representations the board had never evaluated the Class B Return, or to compel further discovery and extend the discovery deadline.[23]  Defendants opposed the motion to preclude, contending they had simply offered poor descriptions of what had happened, and offered Plaintiff additional discovery into the board's evaluations.[24]  I gave Defendants the benefit of the doubt that they were bumbling along in good faith.  On June 5, I postponed the September trial so Plaintiff could take discovery into Conners's annual evaluations, whether the Company had sufficient operating funds, and the May 5 board meeting, minutes, and purported ratification.[25]  But Defendants never had any intention of collecting more documents:  they knew when they offered more discovery (and a delay of trial) that no documents underlying Conners's determinations or the ratification decision existed.[26]  Defendants produced less than ten documents, mostly emails concerning the May 5 meeting.[27]

---

[23] D.I. 57 at 10–15.

[24] D.I. 64.

[25] D.I. 68.

[26] D.I. 99 at 21 ("THE COURT: No additional searches for documents were done after June 5th? ATTORNEY PEARL: No, no, because there wasn't going to be, because we had already given them everything as part of our normal -- our discovery."); *see* D.I. 84.

[27] D.I. 75 at Mot. 4, 7–10.

On July 18, when it was clear no additional document discovery was forthcoming, Plaintiff moved for sanctions. It again asked the Court to preclude any board ratification defense.[28] On July 29, I once again gave Defendants the benefit of the doubt that these problems stemmed from "incompetence as opposed to bad faith," raising their burden of proof on that defense.[29] I noted more severe sanctions could be warranted based on the landscape at trial.[30]

Broudy's July 31 deposition made clear that Defendants had been lying about the May 5 meeting and falsified the minutes they produced. Defendants' Delaware counsel then admitted Defendants also lied about the annual determinations. Plaintiff now seeks a default judgment against Conners, 4301 Operations, and Broudy for their failure to timely respond to the second amended complaint; against 4301 Operations for failure to retain new counsel by the Court's deadline; and against Conners and 4301 Operations under Court of Chancery Rules 11 and 37.

On January 3, I entered an order granting the motion for default judgment against Conners and 4301 Operations; I stated an explanatory letter would

---

[28] D.I. 75.

[29] D.I. 84.

[30] *Id.*

follow.[31]  This is that letter.

## II.    Analysis

Defendants violated both Rule 11 and Rule 37.  "Rule 11 applies to all papers that an attorney files in connection with a matter pending before the Court."[32]  Rule 11 provides that "[b]y presenting to the Court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief," the pleading is not being "presented for any improper purpose" and that "the factual contentions have evidentiary support."[33]  "Although it seems clear that the intentional filing of factually inaccurate pleadings violates the spirit of Rule 11, there is case law suggesting that non-material misrepresentations to the court may not be sanctionable under Rule 11."[34]

Defendants submitted multiple filings governed by Rule 11 containing blatant and material lies.  The filings stated the Class B Preferred Return was not owed because Conners had annually evaluated the Class B Preferred Return and

---

[31] D.I. 118.

[32] *Xen Invs., LLC v. Xentex Techs., Inc.*, 2003 WL 25575770, at *2 (Del. Ch. Dec. 8, 2003).

[33] Ct. Ch. R. 11(b).

[34] *Beck v. Atl. Coast PLC*, 868 A.2d 840, 854 (Del. Ch. 2005).

concluded 4301 Operations lacked the funds to pay it. That was the crux of Defendants' defense. It was plainly material, and false. "To mislead the court and [Scarabee] about so fundamental a question . . . through plainly false pleadings is a clear violation of Rule 11."[35]

And Defendants violated Rule 37. Under Rule 37, "[i]f a party or an officer, director, or managing agent of a party . . . fails to obey an order to provide or permit discovery," this Court "may make such orders in regard to the failure as are just."[36] On June 5, I entered an order accepting Defendants' offer of discovery into Defendants' ratification defense, and postponing trial. But Defendants did nothing but continue to lie in their written responses. When they made that offer, they had no intention of looking for more discovery.[37] Now the full truth has come out: there was never a ratification, or any determination to ratify.

The next question is what to do about these violations. Under Rule 11, the "sanction imposed . . . must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."[38] And if a party "fails to obey an order to provide or permit discovery," Rule 37 says the Court may

---

[35] *Id.*

[36] Ct. Ch. R. 37(b)(2).

[37] D.I. 99 at 21.

[38] Ct. Ch. R. 11(c)(4).

implement sanctions "as are just."[39]  Possible sanctions include "dismissing the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party."[40]  "Discovery abuse has no place in our courts, and the protection of litigants, the public, and the bar demands nothing less than that our trial courts be diligent in promptly and effectively taking corrective action to 'secure the just, speedy and inexpensive determination of every proceeding' before them."[41]

Default judgment is a rare sanction.  "[C]ourts are and have been reluctant to apply it except as a last resort."[42]  In deciding whether to sanction a party through default judgment, the Delaware Supreme Court has adopted the following guidelines:

> [T]o determine whether the trial court has abused its discretion in dismissing, or refusing to lift a default, we will be guided by the manner in which the trial court balanced the following factors, ... and whether the record supports its findings: (1) the extent of the party's

---

[39] Ct. Ch. R. 37(b).

[40] Ct. Ch. R. 37(b)(2)(C).

[41] *Holt v. Holt*, 472 A.2d 820, 824 (Del. 1984) (quoting Super. Ct. Civ. R. 1.); *see also* Ct. Ch. R. 1; *DG BF, LLC v. Ray*, 2021 WL 5436868, at *4 (Del. Ch. Nov. 19, 2021), *aff'd*, 294 A.3d 63 (Del. 2023) ("Trial courts should be diligent in the imposition of sanctions upon a party who refuses to comply with discovery orders, not just to penalize those whose conduct warrants such sanctions, but to deter those who may be tempted to abuse the legal system by their irresponsible conduct." (quoting *Hoag v. Amex Assurance Co.*, 953 A.2d 713, 717 (Del. 2008))).

[42] *Hoag*, 953 A.2d at 717.

personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.[43]

"These factors–and all of them need not be met—are useful in evaluating a decision to dismiss for failure to prosecute or comply with its rules or orders."[44]

"[T]here must be an element of willfulness or conscious disregard of a court order before entry of judgment is warranted."[45]

A default judgment is appropriate here. Defendants have continually and affirmatively lied to Plaintiff and the Court about facts material to this case, violated court orders, and utterly failed in their discovery obligations.[46] Conners, in his personal capacity and as a 4301 Operations director, is responsible. He knew he had not made the yearly determinations concerning the Class B Preferred Return. He knew there had been no May 5 meeting ratifying those nonexistent

---

[43] *Minna v. Energy Coal S.p.A.*, 984 A.2d 1210, 1215 (Del. 2009) (quoting *Hoag*, 953 A.2d at 718).

[44] *Hoag*, 953 A.2d at 718.

[45] *Connection, Inc. v. Synygy Ltd.*, 2021 WL 1943350, at *2 (Del. Ch. May 11, 2021) (quoting *Gallagher v. Long,* 2007 WL 3262150, at *2 (Del. Nov. 6, 2007)).

[46] *See Korn v. New Castle Cnty.*, 2004 WL 3048839, at *1 (Del. Ch. Dec. 6, 2004) ("To the extent that defendants deny any requests for admissions, and the substance of those denied admissions is later proven, defendants may be subject to appropriate sanctions

determinations. He knew counsel prewrote the May 5 minutes.[47] He told the Court and Plaintiff the determinations and May 5 meeting happened when he knew they had not.

And Plaintiff has been and continues to be prejudiced. Defendants raised a false defense mere weeks before discovery ended. I heard two discovery motions as Plaintiff tried to investigate those false statements, and I delayed trial so that Plaintiff could obtain discovery, which Defendants never intended to provide. As for Defendants' history of dilatoriness, they strung Plaintiff along for months with inadequate discovery collections, false promises, and blatant lies about Conners's determinations culminating in the concoction of a May 5 board meeting, fake minutes, and ratification. This conduct was addressed with intermediate sanctions, yet the issues compounded. Defendants' conduct was willful and in bad faith, and prejudiced Plaintiff by depriving it of a timely trial against a truthful adversary.

Defendants oppose a default by once again painting their behavior as bumbling rather than bad faith.[48] Conners affirmed he "made good faith attempts to respond to Plaintiff's discovery requests, including by amending and

---

under Court of Chancery Rule 37(c)."); *id*. at *2 (noting "defendants may be subject to sanctions for filing knowingly false responses to the interrogatories").

[47] D.I. 108 Ex. 8.

[48] D.I. 116 at Ans. Br. 10 (claiming Defendants had merely been "too loose in the

supplementing 4301's and my own discovery responses when I believed I had misconstrued the requests or the responses were being misinterpreted."[49]   But Conners does not explain what he misconstrued, or what could be misinterpreted, in making false representations that he, himself, had annually evaluated the Class B Preferred Return.  Nor does Conners address Broudy's candid disavowal of the May 5 meeting and ratification.  I cannot conclude Conners was simply confused.

Defendants also oppose a default by praying for mercy, pointing out that a default judgment is to be awarded sparingly, that this Court has a preference to resolve cases on the merits.  But no mercy can or should be shown to a litigant who repeatedly lies in sworn filings about a fact fundamental to the case.  Whether Conners as a director made annual determinations that the Class B Preferred Return could not be paid is fundamental to Plaintiff's claims that those annual payments are owed.  Defendants' affirmative false statements that he made those determinations and that the board met to ratify them, and production of false board minutes to that effect, tainted this proceeding and obstructed the orderly administration of justice.[50]

---

language they had used regarding LLC formalities" and "imprecis[e]").

[49] D.I. 116 at Aff. of Brian Conners ¶ 14.

[50] *See Beck*, 868 A.2d at 854; *Holt*, 472 A.2d at 824.

And Defendants received mercy for earlier misconduct, but did not reform. The first time they fell short of their obligations, I ordered more discovery (and delayed trial)—only for it to come out that Defendants never intended to even look for more discovery because they had known all along that none existed. Even then, I stopped short of case-dispositive adverse inferences and entered a lesser sanction of an escalated burden of proof, on the chance Defendants had still been doing their best in good faith. But Defendants only continued to act in bad faith.

Defendants argue they are owed a trial on the merits. But Defendants planned to deprive Plaintiff of the same. Having affirmatively lied in multiple court filings and ignored Court orders, the rare sanction of default judgment is appropriate here under Rules 11 and 37.

## III.  Conclusion

Judgment will be entered against Conners and 4301 Operations.[51]

Sincerely,

*/s/ Morgan T. Zurn*
Vice Chancellor

MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*

---

[51] Whether a default or summary judgment against Broudy is appropriate remains under advisement.