# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JONATAN O. RODRIGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.:    N20C-01-201 FJJ |
| v. | ) | |
| CPL. EWEN P. CAHALL, LT. AMOS | ) | |
| CALLAWAY, CPL. ANDREW J. | ) | |
| CASSIDY, C/O KATIE CLARK, | ) | |
| C/O LUIS GOMEZ, SGT. DAVID | ) | |
| HAMRICK, C/O DONALD HASTINGS, | ) | |
| CPL. EDWARD MADIGAN, | ) | |
| CPL MICHAEL J. MITCHELL, | ) | |
| C/O MICHAEL B. RUNNE, CPL MARK | ) | |
| SESSLER, C/O DAVID R. SEYMORE, | ) | |
| SGT. DONALD SMITH, II and | ) | |
| C/O WALTER WHALEY, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: January 3, 2023
Decided: January 27, 2023

## MEMORANDUM OPINION AND ORDER

*Upon Consideration of Defendants' Motions for Summary Judgment*
**GRANTED IN PART and DENIED IN PART**

*Nicholas D. Picollelli Jr., Esquire, and Zi-Xiang Shen, Esquire, Deputy Attorneys General*, Attorney General's Office, 820 N. French Street, 7th Floor, Wilmington, Delaware. *Attorneys for Defendants*.

*Herbert Mondros, Esquire*, Rigrodsky Law, P.A. 300 Delaware Avenue, Suite 210, Wilmington, DE. *Attorney for Plaintiff*.

**Jones, J.**

## INTRODUCTION

Plaintiff Jonatan Rodriguez, an inmate at Sussex Correctional Institute ("SCI"), brings suit against a number of SCI correctional officers and employees (collectively, "Defendants") following a January 26, 2018 physical confrontation, which he describes as a "good old-fashioned ass kicking." Mr. Rodriguez alleges assault and battery, intentional infliction of emotional distress, violation of his constitutional rights, and civil conspiracy. The Defendants move for summary judgment against all counts, arguing they used appropriate and reasonable force on Mr. Rodriguez after he defied orders to return to his cell. As explained below, the Court will **GRANT**, in part, and **DENY**, in part, the Defendants' Motion.

## PROCEDURAL BACKGROUND

Mr. Rodriguez initially filed a complaint (the "First Complaint") against thirty Delaware Department of Corrections ("DOC") employees on January 23, 2020. As with the present action, the First Complaint alleged civil battery, civil assault, intentional infliction of emotional distress, violation of his constitutional rights, and civil conspiracy. According to the First Complaint, DOC employees beat Mr. Rodriguez, held him in solitary confinement for several years, and otherwise mentally, physically, and emotionally abused him in retaliation for his purported involvement in the 2017 prison riot at James T. Vaughn Correctional Center (the "Vaughn Riot").[1]

---

[1] Although a grand jury initially indicted Mr. Rodriguez for murder and prison rioting stemming from the Vaughn riot, those criminal charges were ultimately dismissed.

2

The Court granted Mr. Rodriguez's Motion to Amend the First Complaint on June 27, 2022.[2] The Amended Complaint, which the Court considers here, contains five counts, dismisses sixteen of the original thirty defendants, and limits itself to the January 26, 2018 confrontation mentioned above.[3]

## PROCEDURAL ISSUES

As a preliminary matter, the Court must decide which evidence to consider in deciding the present motion. Both parties, through their filings, have requested the Court to disregard certain allegations made by the other party.

Mr. Rodriguez, for his part, encourages the Court to strike the first five paragraphs of the Defendants' opening brief, as well as Volume One of Defendants' opening brief appendix. To Mr. Rodriguez, these portions of Defendants' material contain irrelevant references to the Vaughn Riot, in defiance of the Court's previous order.[4]

Defendants, on the other hand, request the Court to disregard Mr. Rodriguez's affidavit, as it contains information Mr. Rodriguez was required (and allegedly failed) to disclose during discovery.

Upon careful review, neither Defendants' material, nor Mr. Rodriguez's affidavit, will be stricken. The Court's reasoning follows.

---

[2] Prior to granting the Motion to Amend, the Court denied Mr. Rodriguez's Motion to Bifurcate Trial on April 26, 2022. In that Motion, as with the Motion to Amend, Mr. Rodriguez sought to separate the January 26, 2018 confrontation from the rest of his allegations against DOC and SCI employees.

[3] Significantly, the Amended Complaint makes no mention of the riot at Vaughn Correctional. Upon review of the Amended Complaint, Defendants moved for summary judgment. In support of the motion for summary judgment, Defendants submitted an extensive appendix, which included two affidavits from correctional officers involved in the January 2018 altercation with Mr. Rodriguez. This prompted Mr. Rodriguez to file his own affidavit in response. Defendants' reply brief contained two additional affidavits from other correctional officers.

[4] The Court's previous order stated that if Mr. Rodriguez amended his complaint to remove mention of the Vaughn Riot, then the Court would not consider the Vaughn Riot during future filings in this matter.

### A. *Defendants' Mentions of the Vaughn Riot*

This dispute stems from the Court's order made at the hearing on Mr. Rodriguez's Motion to Bifurcate. There, the Court stated:

> Let me ask you this question: If I limit – let's assume, for the sake of this discussion, that I'm considering bifurcating these cases. If I bifurcate the cases with the understanding that it's only assault and battery, and there can be no mention of the Vaughn riot, does that not clear up the issue that the State has?
>
>         \*       \*       \*
>
> I'm going to deny the motion to bifurcate today. I'm going to give you the opportunity at the appropriate time to bring it back to me. But when it comes back to me, understand this: that the only claims – the only way I will consider a further motion to bifurcate this case, if I'm clear, one that the, quote, unquote, question of motive is not in this first case; two, it's absolutely clear who the defendants are going to be. And they are my two points.
>
> I do not want an inconsistent verdict, I don't want the possibility of an inconsistent verdict. Which means that you're going to have to pare – if I'm going to grant it, you're going to have to pare it way down, and be very specific and very singular in your evidence. Which means that none of the evidence of motive can come into this case, and the only thing that can come into this case is was there an assault and a battery. The civil conspiracy claims, all of those, they're gone. All right?[5]

Mr. Rodriguez takes the ruling as a definitive statement. Defendants (correctly) interpret the ruling as a hypothetical.

But now that Mr. Rodriguez has amended his Complaint to remove mention of the Vaughn Riot, the Court questions why Defendants continue to include the riot in their filings. So, while the Court is not striking mention of the Vaughn Riot from

---

[5] Mot. to Bifurcate Hr'g Tr. at 8:2-8; 14:15-15:23.

the Defendants' filings, it also finds the references to be irrelevant. Rest assured, the Court did not take the Vaughn Riot into account in reaching its decision on summary judgment.[6]

### B. Mr. Rodriguez's Affidavit

Next, the Court considers Defendants' application to disregard Mr. Rodriguez's affidavit. In sum, Defendants encourage the Court to ignore the affidavit because it contains information Mr. Rodriguez failed to disclose in discovery.

Any fair comparison of Mr. Rodriguez's affidavit against his discovery responses (especially his interrogatory answers) leads to one conclusion: the discovery responses are, at best, incomplete. The issue, then, becomes the appropriate remedy to cure the discrepancy between the affidavit and the responses.

The Court's inherent power to manage its own affairs provides it with the ability to issue sanctions for discovery abuses,[7] including striking evidence from the record.[8] When deciding whether to exclude evidence, the Court must balance its duty to admit all relevant and material evidence with its duty to enforce standards of fairness and the Rules of the Court.[9]

With the above in mind, the Court finds the facts of this case do not warrant exclusion of Mr. Rodriguez's affidavit. As of now, the docket indicates that the discovery taken so far has been limited to the exchange of written discovery.

---

[6] Obviously, the Court considered that Mr. Rodriguez was housed at SCI at the time of the alleged assault and battery.
[7] *Hoag v. Amex. Assurance Co.*, 953 A.2d 713, 716 (Del. 2008).
[8] *Concord Towers v. Long*, 348 A.2d 325, 326 (Del. 1975).
[9] *Id.*

5

Although the parties scheduled depositions, it is unclear as to whether they took them. What *is* clear, however, is that the parties did not present any deposition testimony in support of their positions in this motion.

The affidavit provided by Mr. Rodriguez is not necessarily inconsistent with his interrogatory responses; rather, it is simply more complete. Additionally, video footage exists of the incident that forms the majority of Mr. Rodriguez's claims. Thus, the Court will not exclude Mr. Rodriguez's affidavit from consideration.

## FACTUAL RECORD

The Court draws the following facts from Mr. Rodriguez's affidavit in opposition to Defendants' Motion for Summary Judgment:[10]

> While at SCI, I worked as a janitor, cleaning the bathrooms and showers. [After my shift], … I was permitted to take a shower before returning to my cell. I had maintained this routine consistently for around two months leading up to January 26, 2018. On January 26, 2018, after my shift [], I prepared to use the shower. Before I could shower, however, CO Cassidy [from the control room] ordered me to return to my cell. At this point, I was standing in the pod []. [I could not see CO Cassidy] clearly through the [control room door] window. As CO Cassidy was not ordinarily on [my] housing unit, I told him I wanted to speak with a CO who was more familiar with my routine of showering after my shift []. CO Cassidy refused my request and I then asked to speak with a Lieutenant. [As I did so], one of the corrections officers remotely closed [my cell door]. At the same time, I observed through the control room window a group of around twenty (20) COs assembling near CO Cassidy. I specifically observed COs Cahall and Madigan at the pod door, and I heard Cahall tell Cassidy, "open this god damn door … we're gonna fuck his little ass up." Because the COs had

---

[10] Rule 56(c) requires the Court to view all facts in a light most favorable to Mr. Rodriguez. In this case, the factual record, as it stands, is scant and the parties have taken very little discovery (including no depositions). This is, perhaps, because security cameras captured the majority of the relevant events on video.

6

closed the door to my cell, I was unable to retreat. CO Cassidy then opened the door from the control room and a group of COs rushed into the pod.

Customarily, if an inmate is posing a threat, a CO can handcuff the inmate through a slot in the door to restrain the inmate without initiating contact. I believe this is a DOC regulation. On this occasion, however, in defiance of that protocol, a group of COs rushed through the door and initiated contact with me. Cahall was the first to charge through the door, spraying my face with pepper spray. As the door to my cell had been closed, I was cornered and unable to retreat. In response to the pepper spray, I put my hands up instinctively to shield my face and swung my arms in an effort to defend myself. As a result of the pepper spray, I was immediately blinded. I was in extreme pain and had difficulty breathing.

The next thing I remember is being tackled and thrown onto the ground, with several officers on top of me. I was pinned to the floor. There was a knee on my lower back and a knee on the side of my face. One CO was contorting my lower body. Another CO was bending and twisting my thumb while cuffing me. While I was pinned to the ground, several COs punched me in the face and kicked me in the thighs and ribs. During the attack, I heard one CO say, "the State is gonna kill him anyway, we might as well do it now." The corrections officers pinned me down and continued to punch me for almost three minutes. To me, it seemed much longer.[11]

Security cameras inside SCI captured the events of the January 26, 2018 confrontation.[12] The footage depicts Mr. Rodriguez cleaning his cell pod, per his usual routine, before facing the control room where CO Cassidy stood. Mr. Rodriguez then speaks to someone (allegedly CO Cassidy) through the control room

---

[11] Affidavit of Jonatan Rodriguez ¶ 12–23.
[12] The video only captures Mr. Rodriguez's cell pod; it does not capture the control room where the correctional officers gathered. The video is not accompanied by audio.

door for the next three minutes.[13]  As Mr. Rodriguez talks to CO Cassidy, his cell door automatically slides shut behind him.[14]

After the cell closes, COs Cahall and Madigan open the control room door and enter the cell pod.[15]  CO Cahall immediately fires a can of pepper spray in Mr. Rodriguez's face.[16]  CO Madigan unsuccessfully attempts to tase him.[17]  Both COs then tackle Mr. Rodriguez to the floor.[18]

Seconds later, eleven additional corrections officers enter the cell pod through the control room door.[19]  The additional corrections officers assist COs Cahall and Madigan in physically restraining Mr. Rodriguez on the floor.[20]  Two corrections officers then pull Mr. Rodriguez off the floor and drag him across the cell pod through the control room door.[21]  At this point, Mr. Rodriguez's legs are in shackles and his arms appear handcuffed over his head.[22]

## STANDARD OF REVIEW

Summary judgment is appropriate when the record "shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[23]  The moving party bears the burden of establishing the nonexistence of

---

[13] In light of *supra* note 5, the Court presumes, based on Mr. Rodriguez's complaint, that it was CO Cassidy behind the control room door.

[14] *See* SCI Security Video at timestamp 9:58:35–9:59:46.

[15] *See id.* at 9:58:46.

[16] *See id.*

[17] *See id.*

[18] *See id.*

[19] *See id.* at 9:59:48. Mr. Rodriguez identifies the corrections officers as COs Cassidy, Whaley, Smith, Seymore, Mitchell, Hamrick, Sessler, McCarthy, and Callaway.  These COs, other than CO McCarthy, are Defendants in this litigation.

[20] *See id.* at 9:59:56–10:02:30.

[21] *See id.* at 10:02:35.

[22] *See id.* From the video, it is unclear how long Mr. Rodriguez had been handcuffed prior to being removed from the floor.

[23] Del. Super. Ct. Civ. R. 56(c).

material issues of fact.[24]  The burden then shifts to the nonmoving party to establish the existence of material issues of fact.[25]  In considering the motion, the Court must view the evidence in a light most favorable to the nonmoving party and accept the nonmovant's version of any disputed facts.[26]

## ANALYSIS

With the above considerations in mind, the Court turns to whether the evidence in the record, when viewed in a light most favorable to Mr. Rodriguez, establishes a genuine issue of fact as to each of his five claims.

### A. Civil Assault and Battery

Counts I and II of Mr. Rodriguez's complaint allege Defendants' conduct sounds in tort for assault and battery.  A *prima facie* assault case requires a general showing that a defendant's conduct placed the plaintiff in apprehension of imminent harmful or offensive physical contact.[27]  For battery, a plaintiff must establish the defendant intentionally caused harmful or offensive contact to the plaintiff.[28]  To recover for battery, a plaintiff must merely show the defendant intended to make non-consensual contact with the plaintiff.  The plaintiff need not prove the defendant intended to actually cause harm.[29]

---

[24] *See Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[25] *See id.* at 681.
[26] *See Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted).
[27] *See Brzoska v. Olson*, 668 A.2d 1355, 1361 (Del. 1995).  Delaware law considers "harmful or offensive" contact to be that which offends a reasonable sense of personal dignity.  *Id.*
[28] *See Miller v. Dockham*, 723 A.2d 397 (Del. 1998).
[29] *See id.*

Here, Defendants provide two assault and battery defenses, both rooted in statute. First, Defendants argue 11 *Del. C.* §§ 467 and 6561(a) grant them permission to use reasonable force on inmates, so long as the force is justified.

Defendants are not incorrect in their statutory interpretation. But when the Court views the facts in a light most favorable to Mr. Rodriguez, it is inescapable that a genuine issue of fact exists as to whether the Defendants' use of force was justified. The Court notes Defendants remotely locked Mr. Rodriguez's cell behind him (thereby preventing his ability to retreat), failed to handcuff him through the slot in the control room door, and CO Cahall ordered CO Cassidy to "open [the] god damn [control room] door" so "[we can] fuck [Mr. Rodriguez]'s little ass up."

In the same vein, Defendants argue the State Torts Act[30] bars Mr. Rodriguez's claims. The State Torts Act, in sum, grants civil immunity to state actors so long as the alleged tortious conduct: (i) arose out of, and in connection with, the performance of official duties involving an exercise of discretion; (ii) was performed in good faith; and (iii) was performed without gross or wanton negligence.[31] Based on the above reasoning, here again, the Court finds a genuine issue of fact exists as to whether the Defendants acted in good faith and without gross or wanton negligence. Defendants' Motion for Summary Judgment as to Counts I and II is accordingly **DENIED**.

---

[30] 10 *Del. C.* § 4001.
[31] *See id.*

## B. Intentional Infliction of Emotional Distress

Count III charges Defendants with intentional infliction of emotional distress ("IIED"). An IIED claim requires proof the defendant intentionally engaged in extreme or outrageous conduct that caused severe emotional distress.[32] Outrageous behavior is "conduct that exceeds the bounds of decency and is regarded as intolerable in a civilized community."[33] As a matter of procedure, Delaware law requires plaintiffs produce expert medical testimony to establish the actions of the defendant proximately caused the plaintiff's emotional distress.[34]

Mr. Rodriguez has not produced expert medical testimony in support of his IIED claim. Consequently, he has failed to establish a *prima facie* IIED case under Delaware law. Defendants' Motion for Summary Judgment on Count III is **GRANTED**.

## C. Violation of the Delaware Constitution

In Count IV, Mr. Rodriguez alleges Defendants violated: (i) his due process rights under Article I, Section 7 of the Delaware Constitution; and (ii) his right to be free from cruel and unusual punishment under Article I, Section 11 of the Delaware Constitution. Specifically, Mr. Rodriguez claims each Defendant "directly or indirectly, [] participated in, and cooperated with one another to intentionally permit the brutalization of [Mr. Rodriguez] in violation of his

---

[32] *Hunt ex. rel. DeSombre v. State*, 69 A.3d 260 (Del. 2013).
[33] *Id.*
[34] *See Ciabattoni v. Teamsters Local 326*, 2020 WL 4331344, at *5 (Del. Super. July 27, 2020); *see also Doe v. Wildey*, 2012 WL 1408879, at *4 (Del. Super. Mar. 29, 2012).

11

constitutional rights to due process and to be free from cruel and unusual punishment."[35]

Delaware law does not recognize private causes of action for the constitutional violations Mr. Rodriguez alleges.[36] Therefore, these claims must fail.

This Court recently rejected a plaintiff's invitation to recognize a new cause of action for excessive force under Article I, Section 6 of the Delaware Constitution in *Schueller v. Cordrey*.[37] The *Schueller* Court, instead, recognized: (i) the plaintiff had alternative remedies in state tort law; (ii) Delaware does not maintain a state statute similar to 42 U.S.C. § 1983 (the Civil Rights Act) that defines new causes of action and their limits; (iii) creating a new cause of action would impose massive financial burdens on state and local entities by subjecting them to suits which lack defined boundaries; and (iv) the Delaware legislature is the entity best suited to create new causes of action.[38]

*Schueller* applies equally to the constitutional violations alleged by Mr. Rodriguez in this case. Defendants' Motion for Summary Judgment on Count IV is **GRANTED**.

### D. Civil Conspiracy

Finally, Count V alleges a civil conspiracy amongst the Defendants. Delaware law requires plaintiffs alleging civil conspiracy to show: (i) a confederation or combination of two or more persons; (ii) an unlawful act done in

---

[35] *See* Plaintiff's Complaint ¶ 61.
[36] *See Winter v. Richman*, 2020 WL 6940760 (D. Del. Nov. 25, 2020); *see also Carr v. Town of Dewey Beach*, 730 F. Supp. 591, 600 (D. Del. 1990).
[37] 2017 WL 568344 (Del. Super. Feb. 13, 2017).
[38] *See id.* at *2.

furtherance of the conspiracy; and (iii) actual damage.[39] Proof of malice, (*i.e.*, an intent to injure) is essential in proof of conspiracy.[40]

Upon examining the facts in a light most favorable to Mr. Rodriguez, the Court finds there is a material factual dispute as to whether Defendants conspired to assault and batter him. The Court is especially troubled by Defendants' inconsistent accident reports and the one-day delay in creating them (an alleged violation of DOC policy).[41]

The record, as it presently stands, creates a question of whether Defendants engaged in a civil conspiracy. That question must be answered by a jury. Defendants' Motion for Summary Judgment on Count V is **DENIED**.

### E. Defendant Luis Gomez

Former SCI corrections officer Luis Gomez is a named defendant in Mr. Rodriguez's amended complaint. The Defendants have filed an affidavit averring that Mr. Gomez was not employed by SCI on January 26, 2018.[42] Mr. Rodriguez has produced no evidence in opposition to the affidavit.

The only remaining accusation against Mr. Gomez that could possibly survive is the civil conspiracy claim. But civil conspiracy is not an independent action; it must be predicated on an underlying wrong.[43] Unlike the other Defendants,

---

[39] *See Nicolet, Inc. v. Nutt*, 525 A.2d 146, 150 (Del. 1987).

[40] *See UbiquiTel, Inc. v. Sprint Corp.*, 2005 WL 3533697, at *8 (Del. Ch. Dec. 14, 2005).

[41] These concerns, of course, are in addition to the troubling accusations mentioned in the assault and battery discussion *supra*.

[42] The affidavit states, and Mr. Rodriguez has not opposed, that Mr. Gomez last worked at SCI on July 9, 2017.

[43] *See WaveDivision Holdings, LLC v. Highland Capital Mgmt., LP.*, 2011 WL 5314507, at *17 (Del. Super. Nov. 2, 2011).

Mr. Rodriguez has presented no evidence of underlying tortious conduct against Mr. Gomez. Mr. Gomez's Motion for Summary Judgment is thereby **GRANTED**.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** as to the IIED and constitutional violation claims, and **DENIED** as to the assault, battery, and civil conspiracy claims.[44] Mr. Gomez's Motion for Summary Judgment is **GRANTED** as unopposed.

**IT IS SO ORDERED.**

_/s/ Francis J. Jones, Jr._

Francis J. Jones, Jr., Judge

cc:      Original to Prothonotary

---

[44] Typically, the remedy for late production is to allow additional discovery or preclude use of the belatedly produced material. The Court is satisfied that any additional discovery will not change the conclusion that a genuine issue of fact exists as to the assault, battery, and civil conspiracy claims. However, if the Defendants so desire, the Court will re-open discovery and allow the Defendants to explore the facts of Mr. Rodriguez's affidavit so they can adequately prepare for trial. Defendants should advise the Court of whether they want the Court to decide the case on the present record or re-open discovery by close of business on February 10, 2023. If the Defendants choose to re-open discovery, they should specify how long of an extension they require.